UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT FRANKFORT

| | |
|---|---|
| TIA TAYLOR, *et al.*,<br><br>   Plaintiffs,<br><br>v.<br><br>KKR & CO., L.P., *et al.*,<br><br>   Defendants. | CIVIL ACTION NO. 3:21-29-KKC<br><br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on Plaintiffs' motion to remand this action to Franklin County Circuit Court. (DE 30.) Defendants have responded (DE 50), the Commonwealth of Kentucky has filed an amicus curiae brief (DE 58), Plaintiffs have replied to Defendants' response (DE 60), and Defendants have moved to file a sur-reply. (DE 65.) The matter is now ripe for the Court's review. For the reasons set forth herein, Defendants' motion to file a sur-reply is GRANTED, this matter is STAYED, and Plaintiffs' motion to remand is DENIED AS MOOT.

I.

While this action is in its infancy in this Court, the underlying dispute has an extensive history that is worth reviewing. In December 2017, a group of plaintiffs (the "Original Mayberry Plaintiffs")—enrollees in retirement plans managed by the Kentucky Retirement Systems ("KRS"), a state agency—brought suit against KRS trustees and officers, investment advisors, and others, alleging that mismanagement of KRS retirement assets had resulted in a 25-billion-dollar deficit in the retirement asset pool. (DE 30-6 at 2–3.) At that time, both KRS and the Kentucky Attorney General declined to participate, and, in November

1

2018, Judge Shepherd of Franklin Circuit Court found that the Original Mayberry Plaintiffs had standing to pursue their claims. (*Id.* at 3.) Two interlocutory appeals from denied motions to dismiss and a motion for a writ of prohibition reached the Supreme Court of Kentucky, which determined in July 2020 that the Original Mayberry Plaintiffs lacked standing to bring a derivative suit on KRS's behalf and lacked taxpayer standing. *Overstreet v. Mayberry*, 603 S.W.3d 244 (Ky. 2020). (*Id.* at 4–5.)

Following the *Overstreet* decision, the Kentucky Attorney General filed a motion to intervene in the case, and the Original Mayberry Plaintiffs filed a motion for leave to amend their complaint to rectify their lack of standing, in part by adding the plaintiffs in this case (the "Tier 3 Plaintiffs"), who are beneficiaries of a "hybrid cash balance plan" rather than beneficiaries of a "defined-benefit" plan like the Original Mayberry Plaintiffs. (*Id.* at 5–6.) Judge Shepherd granted the Kentucky Attorney General's motion finding that the Attorney General was empowered by statute, the Civil Rules, and the *Overstreet* decision to intervene and pursue claims on behalf of the Commonwealth of Kentucky. (*Id.* at 6.) Judge Shepherd denied the Original Mayberry Plaintiffs' motion to amend, finding their proposed amendments insufficient to cure the standing deficiency, and dismissed them from the case. (*Id.*)

The Tier 3 Plaintiffs alone subsequently filed a motion to intervene in the case. The Attorney General filed an amended complaint in May 2021, in which he noted his intent "to assume complete control of this action and to prosecute it to recover all damages caused by Defendants and incurred by the Commonwealth or KRS, including any and all damages for any claims that might otherwise be brought derivatively by Commonwealth taxpayers, citizens, pension fund beneficiaries (regardless of whether such beneficiaries are classified as Tier 1, Tier 2, or Tier 3), on account of Defendants' actions as alleged herein." (*Id.* at 7.) The

Attorney General further expressed his intent "to fully 'occupy the field,' thus rendering the pursuit of any other action filed by any other person in any purported derivative or representative capacity on its behalf, on behalf of KRS, on behalf of the taxpayers or citizens of the Commonwealth, or on behalf of the beneficiaries of any Kentucky public employees' pension plan for the benefit of plan beneficiaries or the Commonwealth unnecessary and unauthorized." (*Id.*)

The Attorney General, KRS, and all Defendants opposed the Tier 3 Plaintiffs' proposed intervention. (*Id.* at 10–11.) In June 2021, Judge Shepherd denied the Tier 3 Plaintiffs' motion to intervene, finding that "the Attorney General will adequately represent the interests of the Tier 3 individuals, and that their involvement in the case is not necessary" and that the Tier 3 Plaintiffs have "no statutory right to pursue a derivative action on behalf of KRS[.]" (*Id.* at 12.) Judge Shepherd declined to reach the issue of whether the Tier 3 Plaintiffs have standing to pursue their claims broadly, but noted that "the Attorney General intends to exercise his broad statutory and common law authority to the benefit of not only KRS or simply the Commonwealth broadly, but for the benefit of all Tier 1, Tier 2, and Tier 3 beneficiaries . . . and accordingly the presence of the Tier 3 Group as plaintiffs would be redundant." (*Id.* at 15–16.) Judge Shepherd further explained that "any recovery secured by the Tier 3 Group would still be subject to the same statutory oversight as any recovery secured by the Attorney General"; "any recovery sought on behalf of KRS—as the Tier 3 Group seeks—must still be deposited in the State Treasury, with the funds administered by the Office of the Controller"; "[the Court] has the ability under KRS 48.005 to specifically apportion any monetary recovery to KRS prior to money being deposited into the general fund, and therefore it is speculative to assert that KRS beneficiaries will experience diminished recovery if the Attorney General pursues this case without the Tier 3 Group"; and "[t]he Court has the ability to order that recovery be specifically tailored as justice requires,

3

and such payment would be made prior to remaining funds being deposited in the general fund." (*Id.* at 16–18.)

After Judge Shepherd denied the Tier 3 Plaintiffs' motion to intervene, the Tier 3 Plaintiffs turned to what they referred to as their "separate backstop action" (DE 50-10 at 7), a derivative action that they had filed in January 2021. (DE 1-1.) Several weeks after their denied intervention, the Tier 3 Plaintiffs' filed the "First Amended Class Action Complaint" that is operative here. (DE 1-3.) Following the Plaintiffs' filing of this Amended Complaint, the Defendants removed the case to this Court, asserting federal question due to Plaintiffs' civil RICO claim and diversity jurisdiction under the Class Action Fairness Act. (DE 1 at 1.)

Plaintiffs filed a motion to remand (DE 30), Defendants responded (DE 50), and the Commonwealth of Kentucky, via the Attorney General, moved for leave to file an amicus brief, which was granted. (DE 56.) Plaintiffs replied (DE 60), and Defendants moved for leave to file a sur-reply. (DE 65.) The matter is now ripe for the Court's review.

## II.

Given the extensive state court litigation that has occurred and is ongoing regarding the circumstances at the heart of this dispute, the Court finds it appropriate to consider whether abstention is appropriate under the principles outlined by the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

In *Colorado River*, "the Supreme Court held that federal courts may abstain from hearing a case solely because there is similar litigation pending in state court." *Bates v. Van Buren Twp.*, 122 F. App'x 803, 806 (6th Cir. 2004). The principles underlying *Colorado River* abstention rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998).

Determining whether abstention under *Colorado River* is warranted is a two-step process. First, the Court must determine whether the state court proceedings and the federal proceedings are "parallel." *Id.* at 340. The state and federal proceedings "need not be identical, merely 'substantially similar.'" *Bates*, 122 F. App'x at 806 (quoting *Romine*, 160 F.3d at 340). "There is also no requirement that the parties in the state court proceedings be identical to those in the federal case." *Bates*, 122 F. App'x at 806 (citing *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990)).

Second, if the proceedings are found to be parallel, the Court must evaluate various factors to determine whether *Colorado River* abstention is appropriate, such as:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and, (8) the presence or absence of concurrent jurisdiction.

*Romine*, 160 F.3d at 340–41. These factors should not be viewed as a mechanical checklist, but rather as important factors to be carefully balanced depending on the particular facts at hand. *Id.* at 341.

### III.

The Court finds this to be the exceptional case where *Colorado River* abstention is warranted and a stay is appropriate.

**A. The State Court and Federal Court Proceedings are Parallel**

The Attorney General's case includes all but one of the defendants in this action, as well as additional defendants. Further, as outlined above, *supra* Section I, it is the understanding of Judge Shepherd—the judge presiding over the Attorney General's case—that the Attorney General is acting for the benefit of the Tier 3 beneficiaries and that the

judge has the power to ensure that the Tier 3 beneficiaries receive the recovery that justice requires. Thus, the parties are not identical, but they are substantially similar.

As to the claims, according to the Plaintiffs, the operative Amended Complaint before this Court "asserts essentially the same state law claims based on the same facts [as the Attorney General's case] (but different damages for different plaintiffs)." (DE 30-1 at 11.) A comparison of the Tier 3 Plaintiffs' Amended Complaint (DE 1-3) and the Attorney General's complaint (DE 30-8) confirms that the Amended Complaint essentially repackages the claims made by the Attorney General as "direct injury" claims to the putative class of Tier 3 Plaintiffs. The only notable addition to the Tier 3 Plaintiffs' Amended Complaint is a civil RICO claim brought under 18 U.S.C. §§ 1962(b), (c) and (d), which—as both Plaintiffs and Defendants admit—is based on the same facts as the state law claims. (DE 30-1 at 17; DE 50 at 19.) Again, the claims are not identical—given the inclusion of the RICO claim—but they are substantially similar, often with only a few changed words to reflect the different plaintiffs.

Given the substantial similarity of the state and federal proceedings, the Court finds them "parallel" for purposes of *Colorado River*.

**B. The *Colorado River* Factors Weigh in Favor of Abstention**

Because the state and federal proceedings are parallel, the Court will evaluate each of the *Colorado River* factors in making its abstention determination.

The first two factors weigh against abstention, as there is no res or property at issue and the federal forum is not particularly less convenient than the nearby state forum.

However, the third through eighth factors weigh heavily in support of abstention. The state court case has been proceeding before Judge Shepherd since December 2017, while the original complaint in this case was filed in January 2021 and removed to this Court in July 2021. Since December 2017, there have been numerous rulings in the state

court case, including one by the Supreme Court of Kentucky. Proceeding with Plaintiffs' claims in this court would pose a great risk of piecemeal results. With the exception of the RICO claim—which the Plaintiffs describe as "a small part of the overall mix of claims" (DE 30-1 at 17)—this case primarily deals with state law issues. Further, the presiding judge in the state court proceedings as already expressed a belief that the Tier 3 Plaintiffs will be adequately represented by the Attorney General and that the court will be able to ensure they receive the recovery justice requires.

Balancing the above factors and comparing the circumstances of these proceedings to those evaluated by the Sixth Circuit in cases such as *Romine* and *Bates*, the Court finds this to be the exceptional case where *Colorado River* abstention is appropriate and necessary.

**C. A Stay is Appropriate**

Although the Plaintiffs (DE 60 at 8) and the Commonwealth of Kentucky (DE 58 at 23) seek remand of this case, Sixth Circuit guidance counsels district courts exercising *Colorado River* abstention to stay the proceedings. *Bates*, 122 F. App'x at 808–09. Accordingly, the Court will stay this matter in deference to the parallel state court proceedings. If there are any remaining issues after resolution of the state court case, Plaintiffs may move to lift the stay.

**IV.**

Accordingly, for the reasons set forth herein, IT IS HEREBY ORDERED that:

(1) Defendants' motion for leave to file a sur-reply (DE 65) is GRANTED;

(2) This matter is STAYED as of the date of entry of this order;

(3) Upon resolution of the state court proceedings in *Commonwealth of Kentucky v. KKR & Co., L.L.P., et al.,* No 17-CI-01348, or annually from the entry of this order, the parties SHALL jointly submit a report to the Court indicating the status of the state

7

court case and, if that case has concluded, whether either party believes there are any remaining issues to discuss; and

(4) Plaintiffs' motion to remand (DE 30) is DENIED AS MOOT, subject to later re-filing if necessary.

This 1st day of March, 2022.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY