EXHIBIT A

# EXHIBIT A

# COMMONWEALTH OF KENTUCKY
## FRANKLIN CIRCUIT COURT
### DIVISION TWO
### CASE NOS. 20-CI-00590 and 24-CI-00354

COMMONWEALTH OF KENTUCKY,
on its own behalf and for the benefit of
all of its departments, commissions,
agencies, political subdivisions, its
citizens, taxpayers, and all pension plan                    PLAINTIFF
beneficiaries,

v.

KKR & CO. INC., et al.,                                       DEFENDANTS

## JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT, TO SEVER CLAIMS AND TO ENTER APPROVAL ORDER

Please take notice that this Joint Motion To Approve Settlement Agreement, to Sever Claims and to Enter Approval Order will come on for hearing before the Franklin Circuit Court at the time set by the Court of February 26, 2025, at **10:00 am Eastern time**, or as soon thereafter as counsel may be heard.

### <u>INTRODUCTION</u>

This Joint Motion to Approve Settlement Agreement and Enter Approval Order ("Joint Motion") is brought by (1) the Commonwealth of Kentucky; (2) PAAMCO Prisma, LLC (formerly Pacific Alternative Asset Management Company, LLC, and hereinafter "PAAMCO"), Jane Buchan, Prisma Capital Partners LP ("Prisma"), and Girish Reddy (the "PAAMCO-Prisma Parties"); (3) KKR Group Co. Inc. (formerly KKR & Co. Inc.), Henry R. Kravis, and George R. Roberts (the "KKR & Co. Inc. Parties"); and (4) Blackstone Inc., Blackstone Alternative Asset Management L.P. ("BAAM"), Stephen A. Schwarzman, and J. Tomilson Hill (the

1

Filed          20-CI-00590 01/08/2025          Kathryn Marshall, Franklin Circuit Clerk

"Blackstone Parties") (together with the KKR & Co. Inc. Parties and the PAAMCO-Prisma Parties, the "Settling Defendants") (all collectively, "Movants").[1] The Kentucky Public Pensions Authority ("KPPA"), County Employees Retirement System ("CERS"), and Kentucky Retirement Systems ("KRS") (together with KPPA and CERS, the "KPPA Entity") have signed the Settlement Agreement and fully support the court's approval of the Settlement Agreement as being in the best interests of the KPPA Entity. The Commonwealth, the Settling Defendants, and the KPPA Entity seek approval of the Settlement Agreement and ask this Court to enter their tendered Approval Order so that they can implement the Settlement Agreement pursuant to its terms. The Settlement Agreement[2] is attached as **Exhibit 1**, and the proposed Approval Order tendered herewith for entry is identical to that attached to the Settlement Agreement as Exhibit A.

As discussed herein, this Settlement Agreement achieves a fair, equitable, and adequate resolution of the underlying dispute that is in the best interest of all Settling Parties, as defined in the proposed Approval Order, and their various constituents, and was reached through arm's-length negotiations between the Settling Parties. Accordingly, Movants respectfully request that this Court approve the Settlement Agreement in all respects, find that the Settlement Agreement is fair, reasonable, and adequate in all regards, direct the Settling Defendants, the

---

[1]    The Settling Defendants do not waive, and expressly reserve, all defenses in this matter including their objections to personal jurisdiction.

[2]    Unless otherwise defined, all terms used herein have the same meanings as set forth in the Settlement Agreement.

Filed          20-CI-00590 01/08/2025          Kathryn Marshall, Franklin Circuit Clerk

Commonwealth and the KPPA Entity to consummate the Settlement Agreement in accordance with its terms, and bar and estop any person or entity from asserting, instituting, maintaining, or participating in any Released Claims that seek collective, plan-wide, trust-wide, system-wide, pension-fund-wide, or tier-wide relief on behalf of or for the KPPA Entity, their predecessors, and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by them or that allege individual injuries that are derivative of alleged injuries to the KPPA Entity, their predecessors, and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by them in any forum, including but not limited to such claims that are currently being asserted by individual claimants in the related *Taylor Actions*. *See* Settlement Agreement ¶¶ 1, 15 (defining terms).

The terms of the Settlement Agreement were heavily negotiated over five-plus months by experienced counsel with the aid of a nationally respected mediator, the Honorable Layn Phillips, former United States District Judge for the Western District of Oklahoma. If approved, the settlement will result in a substantial recovery of $227,500,000.00 (including the return of approximately $145,000,000 in assets held by Daniel Boone Fund LLC in a litigation-related indemnity reserve established by Settling Defendant Prisma), complete resolution of all Released Claims subject to the terms of the Settlement Agreement, and a complete release of the Settling Defendants' claims against the KPPA Entity. The claims against the KPPA Entity include breach of contract damages in which the exposure to the KPPA Entity is estimated by the Settling Defendants to be more than $100 million.

In exchange for the foregoing, the Commonwealth and the KPPA Entity will release all claims against the Settling Defendants that were or could have been asserted in the above-captioned litigations, avoiding additional litigation costs, expenses, and attendant risks for all Settling Parties.

The Settlement Agreement is intended to fully and finally resolve all Released Claims pursuant to terms of the Settlement Agreement that ever were asserted, could have been asserted, or hereafter may be asserted. In particular, it is the intent of the Settling Parties to achieve global peace and resolution on all claims arising out of the common nucleus of operative facts alleged in the Commonwealth's Fund-of-Funds Litigation.[3] This includes actions pursued by other plaintiffs that purport to sue on behalf of or for KPPA Entity-administered plans or trusts and/or that seek plan-wide or trust-wide relief or relief that is derivative of the plan-wide or trust-wide injuries alleged in the Commonwealth's claims. To facilitate the achievement of global peace and to allow potentially interested parties an opportunity to be heard as the Court considers approval of settlement, the Settlement Agreement requires that Movants simultaneously provide notice of the approval hearing to the named plaintiffs in two related actions, *Taylor v. KKR & Co. Inc.*, Civil Action No. 21-CI-00645 in the Franklin County Circuit Court ("*Taylor 1*") and *Taylor v. KKR & Co. Inc.*, No. 3:21-cv-00029 (E.D. Ky.) ("*Taylor 2*") (collectively with *Taylor 1*, the "*Taylor Actions*"). The *Taylor Actions* assert claims

---

[3]   The above-captioned actions, together with the Commonwealth's declaratory judgment action, No. 21-CI-00348 in the Franklin Circuit Court, are referred to by the defined term "Fund-of Funds Litigation." *See* Settlement Agreement at 1.

4

arising out of the common nucleus of operative facts alleged by the Commonwealth in the Fund-of-Funds Litigation, and are brought on behalf of KPPA Entity-administered trusts, seek plan-wide or trust-wide relief and/or allege injuries derivative of the alleged harm to KPPA Entity-administered plans and trusts that form the basis of the Commonwealth's claims. Pursuant to the Settlement Agreement, Movants will make no objection to any of the Plaintiffs in the *Taylor Actions* being heard regarding whether the Settlement Agreement should be granted and the Approval Order entered.

In furtherance of their goal to achieve the certainty of a complete resolution of the dispute between them, the Settling Parties also seek an order from this Court barring and estopping any other persons or entities from asserting the Released Claims against the Settling Defendants that seek collective, plan-wide, trust-wide, system-wide, pension-fund-wide, or tier-wide relief on behalf of or for the KPPA Entity, their predecessors and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by them or that allege individual injuries that are derivative of alleged injuries to the KPPA Entity, their predecessors or the plans, trusts, systems, pension funds, or tiers administered or overseen by them. These barred claims expressly include claims alleged in the *Taylor Actions*. The KPPA Entity and the Commonwealth have the requisite standing and authority to exercise control over and resolve claims asserted for the KPPA Entity-administered trusts or that allege trust-wide injury based on their assessment of what is in the best interests of the KPPA Entity members at large. Plaintiffs in the *Taylor Actions*,

each of whom are Tier 3 pension plan members, hold the same indirect interest in the Settlement Recovery that all Tier 3 members hold. The Settlement Recovery will be allocated among members based on a pre-determined statutory allocation, in which the Tier 3 Plaintiffs will participate on an equal footing together with all other Tier 3 members. The settlement agreed to by the KPPA Entity Boards and the Commonwealth thus inures to the benefit of all members of all tiers, including all Tier 3 members.

The Settlement Agreement allows the Settling Parties to be able to fully resolve at least eight different matters currently pending in three states, allowing the Commonwealth, the KPPA Entity, and Settling Defendants to avoid highly burdensome, hugely expensive, and distracting litigation, such as the plan-wide claims in the *Taylor Actions*.

Accordingly, pursuant to the Settlement Agreement and by this Joint Motion, Movants request that the Court enter the tendered Approval Order and specifically:

1. approve the Settlement Agreement in all respects, find that the Settlement Agreement is fair, reasonable, and adequate in all regards, and direct the Settling Parties to consummate the Settlement Agreement in accordance with its terms;

2. permanently bar and estop all persons or entities from asserting, instituting, maintaining, or participating in, in any forum, any Released Claims against the PAAMCO-Prisma Releasees, the KKR & Co. Inc. Releasees, and the Blackstone Releasees that seek collective, plan-wide, trust-wide, system-wide, pension-fund-wide, or tier-wide relief on behalf of or for the KPPA Entity, their predecessors, and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by them or that allege individual injuries that are derivative of alleged injuries to the KPPA Entity, their predecessors, and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by them;

3. sever all of the claims and causes of action brought against all Settling Defendants from the claims and causes of action brought against all other Defendants; and

4. enter final judgment approving the Settlement Agreement and adjudicate that the claims asserted in the *590 Action* and *354 Action* against all Settling Defendants are fully and finally resolved subject to the terms and conditions of the Settlement Agreement and dismissed with prejudice effective upon distribution of all funds held in the Escrow Account and the Daniel Boone Fund Reserve in accordance with Paragraphs 5(a) and 6 of the Settlement Agreement.

## BACKGROUND

### I.   PROCEDURAL HISTORY

#### A.   *The Commonwealth's Actions*

This litigation began over seven years ago when a group of KPPA Entity beneficiaries filed derivative claims on behalf of the KPPA Entity seeking recovery for damages suffered by the KPPA Entity arising from its investment in three fund-of-funds investments. *Mayberry v. KKR, et al.,* 17-CI-01348 ("*Mayberry*"). In *Overstreet v. Mayberry*, 603 S.W.3d 244 (2020), the Kentucky Supreme Court ordered the *Mayberry* complaint dismissed because the *Mayberry* plaintiffs lacked constitutional or trust-based standing to bring claims for plan-wide injuries, and otherwise lacked standing to assert plan-wide claims as taxpayers or pension fund beneficiaries derivatively. *Id.* at 253-66. In so doing, the Supreme Court emphasized that under Kentucky law it is "the Attorney General, as a constitutionally elected official, [who] is empowered to represent the Commonwealth in cases in which the Commonwealth is the real party in interest." *Id.* at 265. In order to preserve and prosecute those claims, the Attorney General intervened in the *Mayberry* litigation after the *Overstreet v. Mayberry* ruling. At the same time, the Attorney General filed

7

this action as an identical, stand-alone complaint ("*590 Action*") "on its behalf and for the benefit of all its departments, commissions, agencies, political subdivisions, citizens, taxpayers, and pension plan beneficiaries of any and all tiers and classifications who may seek to assert the Commonwealth's claims derivatively." Third Am. Compl. ¶ 1. To further protect the Commonwealth's plan-wide claims, the Attorney General filed another virtually identical complaint, *Commonwealth of Kentucky v. KKR & Co. Inc.*, Civil Action No. 24-CI-00354 ("354 Action"), now consolidated with the *590 Action*. They are collectively referred to herein as the "Commonwealth's Actions" or as the "*590 Action*."

### B.   *Related Litigation*

In the meantime, various Settling Defendants initiated separate lawsuits against the KPPA Entity and related entities in Kentucky, California, and Delaware seeking to enforce indemnity clauses related to the KPPA Entity's fund-of-funds investments and asserting breach of contract claims. Alleging that the Commonwealth's Actions and *Taylor Actions* triggered indemnity obligations owed by Daniel Boone Fund, LLC — the Prisma managed fund-of-funds — Daniel Boone Fund LLC established a litigation reserve that currently holds approximately $145 million in assets ("Daniel Boone Fund Reserve"). The Daniel Boone Fund Reserve became the subject of a *status quo* order in one of the proceedings in the Court of Chancery of the State of Delaware which mandated that the assets in Daniel Boone Fund Reserve remain in place "until competing claims regarding [Daniel Boone Fund's] obligations are resolved." *See Prisma Capital Partners LP v. Daniel Boone*

*Fund, LLC*, C.A. No. 2019-2066 JRS. In response to these lawsuits by the Settling Defendants, the Commonwealth brought a separate action, 21-CI-00348 ("*348 Action*"), seeking, among other relief, a declaratory judgment that the indemnity clauses at issue were not enforceable under the Kentucky Constitution. Division One of the Franklin Circuit Court ruled that the indemnity clauses were unconstitutional and unenforceable. After that ruling was affirmed by the Court of Appeals, it was accepted for discretionary review by the Kentucky Supreme Court and is in the initial stages of briefing.

### C.    *The later-filed Taylor Actions*

Not content with the Attorney General's efforts to pursue damages suffered by the KPPA Entity in a singular, efficient manner, thereafter, a small group of individual claimants (the "*Taylor* Plaintiffs"), represented by a few of the dismissed *Mayberry* plaintiffs' former counsel, initiated additional actions that purport to assert overlapping claims for the same plan-wide recovery derivative of the same plan-wide injuries and based on the same common nucleus of operative facts as those alleged in the Commonwealth Actions. They first repeatedly sought to join the *Mayberry* complaint or to intervene in the Commonwealth's Actions. The Franklin Circuit Court (Shepherd, J.) rejected those efforts as unnecessary because (1) the KPPA Entity enabling act does not empower individual members to pursue claims derivatively on behalf of the KPPA Entity; and (2) the Attorney General was already prosecuting the Commonwealth's and the KPPA Entity's claims for plan-wide recovery. *See* June 14, 2021 Order at 11, 17-CI-1348. Next, the *Taylor*

9

Plaintiffs filed a separate lawsuit in this Court purporting to bring self-styled "direct claims," although such claims were based on the same allegations of plan-wide injury and sought the same plan-wide recovery as the Commonwealth's Actions — indeed, the *Taylor* Plaintiffs expressly disclaimed any individual damages. *See Taylor 1* Compl. ¶ 1, 21-CI-645. And third, the *Taylor* Plaintiffs also filed a purported class action complaint seeking recovery of alleged damages on behalf of a putative class of Tier 3 plan members in the form of tier-wide relief derivative of injuries suffered directly by the KPPA Entity. *Taylor 2* Compl. ¶¶ 1, 177. That action has been removed to federal court. Both of the *Taylor* Actions have been stayed pending appeals concerning whether the *Taylor* Plaintiffs have constitutional, statutory, prudential, or trust-based standing to allow them to assert claims for plan-wide injuries suffered directly by the KPPA Entity, the exact recovery actively pursued in the first-filed Commonwealth Actions.

The claims in all of these actions — *Mayberry*, the *590 Action*, the *354 Action*, and the *Taylor Actions* — are based on the same common nucleus of operative facts and seek recovery against the Settling Defendants and other defendants for allegedly participating in breach of trust, breach of fiduciary duty, aiding and abetting such breach, and participating in a joint enterprise and/or civil conspiracy and/or pattern of racketeering activity in connection with certain investments made by the KPPA Entity with funds managed by certain of the Settling Defendants. Setting aside whether the plaintiffs in the *Taylor Actions* have standing to pursue their claims — Movants contend they do not — under the Commonwealth's theory

of liability as well as the theory asserted in the *Taylor Actions*, the remedies arise from the same alleged harm that when present would undisputably have been suffered on a plan-wide basis directly by the KPPA Entity. The Settlement Agreement, negotiated at arm's length by the Commonwealth and the KPPA Entity and approved by the KPPA Entity's current boards, resolves all of the Released Claims arising from the identical plan-wide harms alleged, as well as the claims in the other Related Litigations as discussed further herein.

## II.   THE SETTLEMENT TERMS AND NEGOTIATIONS

### A.   *The Extensive Settlement Negotiations*

On May 1, 2024, the Court entered an order denying the Settling Defendants' various motions to dismiss in the Commonwealth's Action, and specifically noting that the "Parties are encouraged to continue settlement negotiations." May 1, 2024 Order at 12, *590 Action*. Given the complexity of the interlaced proceedings in the Fund-of-Funds Litigation and the Related Litigations,[4] Movants engaged former United States District Court Judge Layn Phillips, a respected, knowledgeable, and experienced mediator with significant experience in complex, high-stakes, financial disputes. *See generally*, **Exhibit 2**, Phillips Affidavit.

---

[4]   The term "Related Litigations" has the same meaning as defined in the attached Settlement Agreement, which refers to six specific matters and their appeals or spinoffs, all of which arose out of the subject matter of the Commonwealth's Actions and are between Movants as well as certain of the KPPA Entity's trustees: three of these matters are in Delaware, one in the Federal District Court in the Eastern District of Kentucky, and one currently pending before the Kentucky Supreme Court after that Court accepted discretionary review of lower Kentucky courts' dismissal of the lawsuit on ripeness grounds. *See* Settlement Agreement ¶ 11 at 7–8.

11

An initial two-day mediation session was conducted on July 10–11, 2024, in New York, New York, attended by Judge Phillips, his two assistant mediators, counsel for all Settling Parties, and representatives of all Settling Parties. Over the course of the two days, the Settling Parties made progress but were unable to agree on the material terms at the initial session. Hundreds of hours were then spent continuing to discuss and negotiate the terms of a possible resolution. After months of further intensive arm's length negotiations, on September 22, 2024, Judge Phillips called upon his expertise and experience, and the knowledge he had gained from both sides about the case, to make a "mediator's proposal" related solely to a potential Settlement Recovery amount. Judge Phillips proposed a Settlement Recovery in the amount of $227.5 million, which included the return to the KPPA Entity of the approximately $145 million of currently retained Daniel Boone Fund Reserve assets and which was contingent on the Settling Parties' subsequent agreement on non-economic terms. By September 24, 2024, this mediator's proposal was accepted.

Weeks of arm's length negotiations ensued over non-monetary terms, including another in-person full-day mediation session in New York on October 22, 2024. On November 17, 2024, drawing upon the extensive negotiations that had taken place, Judge Phillips and his team, sensing that the parties were close to impasse on non-monetary terms, made another mediator's proposal on the remaining disputed terms. The second mediator's proposal was accepted by November 18, 2024, and, following additional detailed counsel-to-counsel

12

Filed          20-CI-00590 01/08/2025          Kathryn Marshall, Franklin Circuit Clerk

negotiations, the Settlement Agreement was finalized (**Exhibit 1** to this Joint Motion and an attachment to Exhibit 1 to the Approval Order). *See generally* **Exhibit 2**, Phillips Affidavit.

On December 20, 2024, authorized representatives for the Commonwealth and the three sets of Settling Defendants executed the Settlement Agreement. On January 3, 2025, all three KPPA Entity Boards approved the Settlement Agreement and authorized representatives of the three KPPA Entity Boards executed the Settlement Agreement.

### B.     The Scope of the Settlement Agreement

Pursuant to its terms, the Settlement Agreement is intended to fully and finally resolve all Released Claims between and among the Settling Parties and their respective Related Parties in the Fund-of-Funds Litigation and Related Litigations, including Released Claims in the *Taylor Actions*, which are asserted on behalf of KPPA Entity-administered plans or trusts, seek plan-wide or trust-wide relief, and/or allege injuries derivative of alleged harm to KPPA Entity-administered plans or trusts. The Settlement Agreement provides the Commonwealth with a recovery of $227,500,000.00 (inclusive of the approximately $145 million in assets held in the Daniel Boone Fund Reserve) plus earnings, as well as final resolution of many years of costly, time-consuming litigation involving the disputes over the funds-of-funds investments at issue. Resolution of these actions will end a series of years-long litigation that commenced in 2017, asserted claims dating back to 2010, and sought to recover for plan-wide injuries alleged for

13

the benefit of the entire KPPA Entity system, every one of its trust funds, and every

tier of its beneficiaries.[5]

In addition to resolving the Commonwealth's Actions and the Fund-of-Funds

Litigation, under the terms of the Settlement Agreement, upon its approval,

Movants, and where appropriate the KPPA Entity, will also take steps to resolve

the related Supreme Court appeals filed by various Settling Defendants in

connection with these actions, including: *Daniel Boone Fund, LLC v.*

*Commonwealth*, No. 2024-SC-0093; *KKR & Co. Inc. v. Commonwealth*, No. 2024-

SC-0094; *PAAMCO Prisma, LLC v. Commonwealth*, No. 2024-SC-0095; and

*Blackstone Alternative Asset Management L.P. v. Commonwealth*, No. 2024-SC-

0096.

In addition, approval of the Settlement Agreement also resolves various

lawsuits pending outside Franklin Circuit Court involving the Commonwealth

and/or the KPPA Entity and various Settling Defendants, including any and all

appeals, motions for discretionary review, or petitions for writs of prohibition or

mandamus related to those litigations (referred to in the Settlement Agreement as

the "Related Litigations"). These matters include:

    a. *Prisma Capital Partners LP v. Daniel Boone Fund LLC*, No. 2019-0266, in
       the Delaware Court of Chancery;

---

[5]   The Settlement Agreement contains a no admission of liability provision and
affirms that the "Settling Defendants continue to deny liability with respect to all
the Commonwealth's claims and maintain that they have settled solely to avoid the
expense, distraction and inconvenience of further litigation." Settlement Agreement
¶¶ 14(a), 14(b).

b. *Prisma Capital Partners LP v. Board of Trustees of the Kentucky Retirement Systems*, No. 2019-0267, in the Delaware Court of Chancery;

c. *PAAMCO Prisma, LLC v. Board of Trustees of the Kentucky Retirement Systems*, No. 30-2019-01062341-CV-BC-CXC, in the Superior Court of California, Orange County;

d. *KKR & Co. Inc. v. Daniel Boone Fund LLC*, No. 2021-0998-JRS, in the Delaware Court of Chancery;

e. *Blackstone Alternative Asset Management L.P. v. KPPA, et al.*, No. 2023-SC-0354-D, in the Kentucky Supreme Court;

f. *Blackstone Alternative Asset Management L.P. v. Harris*, No. 3:19-cv-0029-GFVT (E.D. Ky.), in the Eastern District of Kentucky.

The Settlement Agreement, which was entered into after extensive arm's-length negotiations and in exchange for substantial monetary consideration, allows the Settling Parties, this Court, and other courts to resolve the full breadth of cases spawned by the common nucleus of operative facts at issue in the Fund-of-Funds Litigation.

### C.    The Structure of the Settlement Agreement

The Settlement Agreement is structured based on a series of straightforward conditions. First, the KPPA Entity Boards must approve and consent to the Settlement Agreement. The KPPA Entity Boards approved and consented to the Settlement Agreement on January 3, 2025, so this condition has already been fulfilled.

Second, the Settlement Agreement is conditioned on Movants' filing this joint approval motion in this action seeking this Court's approval of the Settlement Agreement and entry of the Approval Order, and also providing notice of the Settlement Agreement to the plaintiffs in the *Taylor Actions*. Those notices have

been filed simultaneously with the filing of this Joint Motion, so these conditions have been satisfied as well.

Third, if the Court enters the Approval Order substantially in the form attached hereto as **Exhibit 1**, within 30 calendar days of such Order being entered, the Settling Defendants must collectively deposit the $227.5 million Settlement Recovery into an agreed escrow account, less a dollar-for-dollar credit in the amount of the remaining funds and assets held in the Daniel Boone Fund Reserve. The Daniel Boone Fund Reserve component of the Settlement Recovery shall be held in an agreed reserve pursuant to the *status quo* provisions of the approved Settlement Agreement. *See* Settlement Agreement ¶¶ 3 & 4. The $227.5 million Settlement Recovery, including the approximately $145 million of assets currently in the Daniel Boone Fund Reserve, shall be distributed and provided to the Commonwealth and the KPPA Entity once certain conditions satisfying the Event Trigger are met. *See* Settlement Agreement ¶ 15(d).

The Approval Order requests, among other provisions, that this Court approve the Settlement Agreement in all respects; find that the Settlement Agreement is fair, reasonable, and adequate; direct the Settling Parties to consummate the Settlement Agreement in accordance with its terms; and bar and estop any person or entity from asserting, instituting, maintaining, or participating in any such Released Claims that seek collective, plan-wide, trust-wide, system-wide, pension-fund-wide, or tier-wide relief on behalf of or for the KPPA Entity, their predecessors, and/or the plans, trusts, systems, pension funds, or tiers

16

administered or overseen by them or that allege individual injuries that are derivative of alleged injuries to the KPPA Entity, their predecessors, and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by them in any forum. This bar order is applicable to claims that are currently being asserted in the *Taylor Actions*.

The first prong of the Event Trigger requires the Approval Order to be entered and that it become Final and no longer appealable. *Id.* To reflect its finality, the proposed Approval Order expressly states that it is "final and appealable," and that it "fully and finally resolves" all claims asserted in the *590 Action* and *354 Action* against the Settling Defendants subject to the terms and conditions of the Settlement Agreement. *See* **Exhibit 1,** Settlement Agreement ¶¶ 14 & 18; *see also* CR 54.02. Thus, once entered, the Approval Order will be final and appealable. *See Hampton v. Intech Contr., LLC*, 581 S.W.3d 27, 31 (Ky. 2019). Once any appeals of the Approval Order are exhausted, the first prong of the Event Trigger will be satisfied.

The second prong of the Event Trigger eliminates both the risk that the Settling Defendants could be forced to pay more than once for claims that arise from the same nucleus of common fact and allege the same plan-wide or trust-wide injuries as well as the litigation risks and burdens the KPPA Entity (and indirectly the Commonwealth) would face if the *Taylor Actions* or any similar litigations could still be maintained. The second prong of the Event Trigger can be satisfied by two independent events: a final ruling that all claims currently pending against the

Settling Defendants in *Taylor 1* are dismissed with prejudice and the dismissal is Final, *or* a final ruling that the *Taylor 1* plaintiffs do not have standing or otherwise lack legal authority to continue pursuing claims against the Settling Defendants or their Related Parties for collective, plan-wide, trust-wide, system-wide, pension-fund-wide, tier-wide relief, or relief on behalf of or for the KPPA Entity, otherwise labeled as relief to be paid to the KPPA Entity. Settlement Agreement ¶ 15(d) at 14.

Once the order or orders satisfying the first and second prongs of the Event Trigger become Final, the monies and assets comprising the $227.5 million Settlement Recovery (plus earnings) will be distributed from the escrow account to the Commonwealth and the KPPA Entity (and the approximately $145 million Daniel Boone Fund Reserve assets (plus earnings) returned directly to the KPPA Entity), and the Fund-of-Funds Litigation and Related Litigations will all be dismissed with prejudice.

### D. The Commonwealth and the KPPA Entity Have Determined that the Settlement Agreement is in their Best Interest

As described herein, the Settlement Agreement is the carefully considered product of lengthy, hard-fought negotiations. The Commonwealth and the KPPA Entity each have independently determined that the terms and conditions of the Settlement Agreement are in their best interest and in the best interest of all plans, trusts, systems, pension funds, and tiers whose interests any of the KPPA Entity administers and/or oversees, and each of the respective boards of the KPPA Entity have, exercising their business judgment, approved the Settlement Agreement. In so doing, the Commonwealth and the KPPA Entity have determined that entry into,

18

approval of, and performance of the Settlement Agreement will provide all KPPA Entity-administered plans, trusts and tiers full resolution of the Released Claims in a manner that is in the best interests of the Commonwealth and the KPPA Entity under the circumstances. The KPPA Entity, through its Boards of Trustees, has exercised control over and chosen to resolve the Released Claims in the *Taylor Actions* that assert claims for KPPA Entity-administered plans or trusts, that seek collective, plan-wide, trust-wide, system-wide, pension-fund-wide, tier-wide, relief and/or that allege injuries derivative of alleged injuries to the KPPA Entity, their predecessors and/or or the plans and trusts they administer.

Following distribution of the Settlement Recovery to the Commonwealth and the KPPA Entity, the Commonwealth and the KPPA Entity will follow routine practices to ensure that, following satisfaction of KRS 48.005(4), the Settlement Recovery will be allocated to the KPPA Entity's trusts for the benefit of all of its tiers of beneficiaries. The Commonwealth and the KPPA Entity will also abide by any applicable public accountability requirements. This will ensure that the Settlement Recovery inures to the public benefit of the KPPA Entity, its pension plans, and the beneficiaries of all tiers, including Tier 3 beneficiaries as a whole and not just the *Taylor* Plaintiffs, in amounts computed under pre-determined formulae.

## III.  MOTION TO SEVER THE COMMONWEALTH'S CLAIMS AGAINST THE SETTLING DEFENDANTS FROM THE NON-SETTLING PARTIES IN THE COMMONWEALTH'S ACTION

Aside from the Settling Defendants, the Commonwealth has also sued as defendants in this Action (i) Brent Aldridge, T.J. Carlson, William Cook, Jennifer Elliot, Thomas Elliott, Bobby Henson, Vince Lang, Timothy Longmeyer, Randy

19

Overstreet, David Peden, and William Thielen (the "Trustees and Officers Parties");
(ii) R.V. Kuhns & Associates, Inc. (RVK), Jim Voytko, and Rebecca Gratsinger (the
"RVK Parties"); and (iii) Cavanaugh Macdonald Consulting LLC, Thomas
Cavanaugh, Todd Green, and Alisa Bennett (the "CavMac Parties," and together
with the Trustees and Officers Parties and the RVK Parties, the "Non-Settling
Parties" or the "Non-Settling Defendants").[6] By Orders dated May 1, 2024, this
Court granted in part and denied in part the Trustees and Officers Parties' motions
to dismiss, which dismissed the Commonwealth's civil conspiracy claims against
Brent Aldridge, T.J. Carlson, and William Thielen, but otherwise refused to dismiss
the Commonwealth's remaining claims against Brent Aldridge, T.J. Carlson, and
William Thielen, and denied in full the motions to dismiss brought by the remaining
Trustees and Officers Parties. All of the Trustees and Officers Parties remain as
defendants in the Commonwealth's Action. By Order dated May 1, 2024, this Court
granted the RVK Parties' and the CavMac Parties' motions to dismiss. The
Commonwealth's appeals as to these dismissals are currently pending.

The Non-Settling Parties are not parties to the Settlement Agreement, and
any and all claims, rights, and defenses between the Commonwealth and the Non-
Settling Parties that arise out of the same common nucleus of operative facts as

---

[6]     For the avoidance of doubt and for the reasons discussed herein, the Settlement
Agreement fully and finally resolves any claims, whether asserted herein by the
Commonwealth or in the *Taylor Action*, against William Cook and David Peden in
their capacities as former Prisma employees and fully and finally resolves the
claims asserted against Michael Rudzik, a PAAMCO-Prisma Related Party, in the
*Taylor Actions*.

E31792B6-E922-48AB-B016-8E9161499B4F : 000021 of 000084

those alleged in the Commonwealth's Actions remain unimpacted by the Settlement Agreement and the tendered Approval Order. Accordingly, in conjunction with this Approval Motion and as part of the tendered Approval Order, Movants respectfully request that this Court sever the claims and causes of action brought by the Commonwealth against the Settling Defendants from the claims and causes of action brought against all Non-Settling Defendants, so that the Commonwealth's Action against the Non-Settling Defendants, including all appeals stemming from this Action, can proceed unimpacted by the Settlement Agreement.

## ARGUMENT

The Settlement Agreement fully and finally resolves all claims as to the Settling Parties in the *590 Action*, the Fund-of-Fund Litigations, and all Related Litigations. Movants submit that the Settlement is fair, reasonable and adequate, and in the best interests of the Commonwealth, the KPPA Entity, and all plans, trusts, systems, pension funds, and pension plan members and beneficiaries of any and all tiers and classifications whose interests the KPPA Entity oversees and/or administers, and for whose benefit the Commonwealth has sued in the *590 Action* and the Fund-of-Funds Litigation. The KPPA Entity and the Commonwealth have the authority to enter into the Settlement Agreement, and have exercised their sound business judgment in doing so.

As the Kentucky Supreme Court has noted, the Commonwealth, through the Attorney General, is legally authorized to bring this case pursuant to KRS 15.020 as the "real party in interest" "on its behalf and for the benefit of all its departments, commissions, agencies, political subdivisions, citizens, taxpayers, and pension plan

21

AS : 000021 of 000034

Filed        20-CI-00590 01/08/2025        Kathryn Marshall, Franklin Circuit Clerk

beneficiaries of any and all tiers and classifications" for injuries caused to "the Commonwealth, its departments, commissions, agencies, political subdivisions, citizens, taxpayers, and all pension plan beneficiaries." Third Am. Compl. ¶ 1; *Overstreet* v. *Mayberry*, 603 S.W.3d 244, 265–66 (Ky. 2020). Since its intervention and throughout this litigation, the Commonwealth, through the Attorney General, has adequately, diligently, and competently represented the interests of all of its departments, commissions, agencies, political subdivisions, citizens, taxpayers, pension plans and trusts, and pension plan members and beneficiaries of any and all tiers and classifications for whose benefit it is suing in this case. The Commonwealth therefore has the authority to settle this litigation.

The KPPA Entity, through its Boards, likewise has "the powers and privileges of a corporation, including but not limited to the [power to] . . . sue and be sued in its corporate name," *see* KRS 61.505(3)(a); KRS 61.645(2)(a), which necessarily includes the right to settle claims on behalf of its trusts and members. *Cf. City of Louisville* v. *Louisville Ry. Co.*, 63 S.W. 14, 17 (Ky. 1901) ("[A municipal corporation] may sue and be sued, and the right to settle matters in litigation follows logically from the right to maintain or defend actions."). The KPPA Entity's enabling statute also endows the KPPA Entity Boards with the power to "conduct the business and promote the purposes for which it was formed," including to "administer and operate" "[a]ll administrative actions, orders, decisions, and determinations necessary to carry out benefit functions required by [KPPA]." KRS 61.505(1)(c)(6); KRS 61.645(2)(c).

Filed        20-CI-00590 01/08/2025        Kathryn Marshall, Franklin Circuit Clerk

The Settlement Agreement is the result of fair, good faith, arm's-length negotiations between the Settling Parties. As detailed in **Exhibit 2**, the affidavit of Judge Phillips, the Settling Parties negotiated intensively over the course of five-plus months, including in three full days of in-person mediation and numerous phone calls among and between the Settling Parties and a team of three mediators. The Settling Parties were presented with "mediator's proposals" on two separate occasions to avoid impasse. Each of the Settling Parties was represented by experienced counsel who zealously represented the interests of their respective Parties and their Related Parties. Judge Phillips has attested that he "believe[s] that the Settlement represents a recovery and outcome that is reasonable and fair for all Parties involved" and that it is "in the best interests of the Parties that they avoid the burdens and risks associated with taking a case of this size and complexity to trial." *See* **Exhibit 2**, Phillips Affidavit ¶ 16.

Both the Commonwealth and the KPPA Entity are legally authorized to enter into the Settlement Agreement and to thereby, in accordance with the terms and conditions of the Settlement Agreement, fully and finally resolve with prejudice, and to fully release, any and all claims that the Commonwealth and/or the KPPA Entity have brought, or could have brought, for plan-wide or tier-wide relief, that arise out of the common nucleus of operative facts alleged in this case, whether direct, derivative, taxpayer, contract, tort, trust, common law, or statutory, including but not limited to such claims asserted in the *Taylor Actions*. *See* KRS 61.645; KRS 15.020; *cf. Overstreet*, 603 S.W.3d at 261 n. 75 (citing KRS 61.645). The

Settlement Recovery to be received by the Commonwealth and the KPPA Entity under the Settlement Agreement will be subject to appropriate public accountability and will inure to the benefit of the Commonwealth, the KPPA Entity, and the pension plans and individual members whose interests the KPPA Entity administers.

The current KPPA Entity — that is, the current KPPA Entity boards, no member of whom has been named or implicated in any pending claims — has exercised its sound business judgment and complied with its fiduciary duties in assessing the Settlement Agreement, and independently submits and represents that this Settlement Agreement, including the global Releases of the Released Claims therein for the benefit of itself and its members, is and will be in the best interests of the KPPA Entity and all plans, trusts, systems, pension funds, and tiers whose interests any of the KPPA Entity administers and/or oversees. In so concluding, the KPPA Entity has considered not only that the Settlement Agreement will provide a substantial recovery for the KPPA Entity, for the benefit of itself and its members, but also that resolving the *590 Action*, the Fund-of-Fund Litigations, and all Related Litigations will allow the KPPA Entity to avoid the substantial costs, burdens, and risks of this and all the other ancillary litigation.

In particular, if this settlement resolving the Commonwealth's Actions is not approved and if the *Taylor* Actions were permitted to continue, the KPPA Entity will be subjected to burdensome, time-consuming, and highly distracting litigation, including extensive discovery that reaches back at least to 2011 and implicates both

24

Filed   20-CI-00590 01/08/2025   Kathryn Marshall, Franklin Circuit Clerk

current and former government officials. The KPPA Entity may also be exposed to cross-claims by defendants in the *Taylor* Actions, as well as extremely burdensome and expensive litigation defending against the Settling Defendants' separate lawsuits in the Related Litigations, which collectively seek against the Commonwealth, the KPPA Entity, and related officials awards in excess of $100 million of damages. The Kentucky taxpayers would ultimately bear all those costs if this settlement is not approved and the Taylor Actions are not accordingly barred, and the Commonwealth and KPPA Entity acknowledge that it is in the agency's and the public's best interest to bring to a close this series of protracted litigation upon the terms mutually negotiated and agreed upon between the Settling Parties.

Under Kentucky law, the KPPA Entity's independent business judgment in this regard is entitled to deference. *See, e.g.*, *Allied Ready Mix Co. ex rel. Mattingly v. Allen*, 994 S.W.2d 4, 8 (Ky. App. 1998) (Kentucky recognizes the "business judgment rule," which is the "presumption that in making a business decision, not involving self-interest, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company"); *United States SEC v. Citigroup Glob. Mkts.*, 752 F.3d 285, 294 (2d Cir. 2014) ("Absent a substantial basis in the record for concluding that the proposed consent decree does not meet these requirements" the district court is required to give deference to an agency's determination and "enter the order"); *see also* KRS 61.645(2) ("The [KPPA Entity] board is hereby granted the powers and privileges of a corporation."). It is the KPPA Entity's judgment that, considering all

Filed   20-CI-00590 01/08/2025   Kathryn Marshall, Franklin Circuit Clerk

of the circumstances, including those set forth in this motion, the Settlement Agreement is in the best interests of the KPPA Entity and its constituents.

Similarly, the Commonwealth has authority to assess whether this Settlement Agreement, including the global Releases of the Released Claims in accordance with its terms, is fair, reasonable, and adequate to itself and all of its departments, commissions, agencies, political subdivisions, citizens, taxpayers, pension plans and trusts, and pension plan members and beneficiaries of any and all tiers and classifications, whose interests it represents in the Fund-of-Funds Litigation. The Commonwealth likewise submits and represents that the Settlement Agreement is fair and reasonable. This assessment, like the assessment of the KPPA Entity, is subject to deference.

The Settling Parties' entry into and performance of the Settlement Agreement thus shall constitute a full accord and satisfaction of the Released Claims between the Settling Parties for the purposes of effectively and preclusively releasing the Settling Defendants from all further liability for Released Claims, in accordance with the terms and conditions of the Settlement Agreement, in all current and future actions. *See* **Exhibit 1**, Settlement Agreement ¶¶ 7, 9. The Releases of the Released Claims to be delivered by the Commonwealth and the KPPA Entity, each acting on its own behalf and for the benefit of all of its departments, commissions, agencies, political subdivisions, citizens, taxpayers, pension plans and trusts, and pension plan members and beneficiaries of any and all tiers and classifications, are intended to, and shall, pursuant to the terms and

conditions of the Settlement Agreement, constitute a fully effective release as between the Settling Parties for all Released Claims, and should constitute a bar for any other person or entity seeking recovery on any Released Claims for plan-wide, trust-wide, system-wide, pension-fund-wide and tier-wide scope based on the same common nucleus of operative facts, and/or for individual injuries that are derivative of alleged injuries to the KPPA Entity. *See, e.g.*, *3D Enters. Contracting Corp.* v. *Louisville & Jefferson Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005) (upholding the preclusive effect of settlement agreements) (collecting cases).

## CONCLUSION

Accordingly, to allow the Settlement Agreement to be effectuated according to its terms and conditions in accordance with the intent of the Settling Parties, and to allow the Commonwealth and the KPPA Entity to receive the Settlement Recovery of $227.5 million plus earnings, the Settling Parties respectfully request that the Court enter the proffered Approval Order and:

1. approve the Settlement Agreement in all respects, find that the Settlement Agreement is fair, reasonable, and adequate in all regards, and direct the Settling Parties to consummate the Settlement Agreement in accordance with its terms;

2. permanently bar and estop all persons or entities from asserting, instituting, maintaining, or participating in, in any forum, any Released Claims against the PAAMCO-Prisma Releasees, the KKR & Co. Inc. Releasees, and the Blackstone Releasees that seek collective, plan-wide, trust-wide, system-wide, pension-fund-wide, or tier-wide relief on behalf of or for the KPPA Entity, their predecessors, and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by them or that allege individual injuries that are derivative of alleged injuries to the KPPA Entity, their predecessors, and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by them;

3. sever all of the claims and causes of action brought against all Settling Defendants from the claims and causes of action brought against all other Defendants; and

4. enter final judgment approving the Settlement Agreement and adjudicate that the claims asserted in the *590 Action* and *354 Action* against all Settling Defendants are fully and finally resolved subject to the terms and conditions of the Settlement Agreement and dismissed with prejudice effective upon distribution of all funds held in the Escrow Account and the Daniel Boone Fund Reserve in accordance with Paragraphs 5(a) and 6 of the Settlement Agreement.

The tendered Approval Order is provided herewith.

Respectfully submitted,

/s/ *Ann B. Oldfather*
Ann B. Oldfather (KBA 52553)
R. Sean Deskins (KBA 92430)
Michael R. Hasken (KBA 94992)
OLDFATHER LAW FIRM PLLC
1330 South Third Street
Louisville, KY 40208
Telephone: (502) 637-7200
Email: aoldfather@oldfather.com
sdeskins@oldfather.com
mhasken@oldfather.com

Casey L. Dobson
S. Abraham Kuczaj, III
Scott Douglass McConnico, LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
Telephone: (512) 495-6300
Email: cdobson@scottdoug.com
akuczaj@scottdoug.com

Justin D. Clark (KBA 89313)
Aaron J. Silletto (KBA 89305)
Office of the Kentucky Attorney General
1024 Capital Center Drive
Suite 200
Frankfort, KY 40601

/s/ *Donald J. Kelly (w/permission)*
Donald J. Kelly
Sean G. Williamson
Victoria Boland Fuller
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY 40202
(502) 589-5235

Brad S. Karp (*pro hac vice*)
Andrew J. Ehrlich (*pro hac vice*)
Brette Tannenbaum (*pro hac vice*)
David P. Friedman (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
*Counsel for Blackstone Alternative Asset Management L.P.; Blackstone Inc.; Stephen A. Schwarzman; and J. Tomilson Hill*

/s/ *Grahmn N. Morgan (w/permission)*
Grahmn N. Morgan
Seth T. Church
Erica A. Ashton

28

Tel: (502) 696-5300
aaron.silletto@ky.gov
justind.clark@ky.gov
*Counsel for the Commonwealth of Kentucky*

**With the consent of:**

/s/ *Paul C. Harnice  (w/permission)*
Paul C. Harnice
STOLL KEENON OGDEN PLLC
201 West Main Street, Suite A
Frankfort, Kentucky 40601
*Counsel for Kentucky Public Pensions Authority*

/s/  *W. Eric Branco  (w/permission)*
W. Eric Branco
Johnson Branco & Brennan, LLP
326 W Main Street
Frankfort, Kentucky 40601
*Counsel for County Employees Retirement System*

/s/  *Janet P. Jakubowicz (w/permission)*
Janet P. Jakubowicz
DENTONS BINGHAM GREENEBAUM, LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
*Counsel for Kentucky Retirement Systems*

DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, KY 40507
Telephone: 859-425-1010
Facsimile: 859-425-1099
grahmn.morgan@dinsmore.com
seth.church@dinsmore.com
erica.ashton@dinsmore.com

Michael J. Garvey (*pro hac vice*)
Peter E. Kazanoff (*pro hac vice*)
David Elbaum (*pro hac vice*)
Sara Ricciardi (*pro hac vice*)
Alison Sher (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: 212-455-2000
Facsimile: 212-455-2502
mgarvey@stblaw.com
pkazanoff@stblaw.com
david.elbaum@stblaw.com
sricciardi@stblaw.com
alison.sher@stblaw.com
*Counsel for Prisma Capital Partners LP, Girish Reddy, PAAMCO Prisma, LLC (formerly Pacific Alternative Asset Management Company, LLC), and Jane Buchan*

/s/  *Grahmn N. Morgan (w/permission)*
Grahmn N. Morgan
Seth T. Church
Erica A. Ashton
DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, KY 40507
Telephone: 859-425-1010
Facsimile: 859-425-1099
grahmn.morgan@dinsmore.com
seth.church@dinsmore.com
erica.ashton@dinsmore.com

Barry Barnett (*pro hac vice*)
Abigail Noebels (*pro hac vice*)
Ryan Weiss (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: 713-651-9366
Facsimile: 713-653-6666
bbarnett@susmangodfrey.com
anoebels@susmangodfrey.com
rweiss@susmangodfrey.com

Steven Shepard (*pro hac vice*)
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: 212-336-8330
Fascimile: 212-336-8340
sshephard@susmangodfrey.com
*Counsel for Defendants KKR Group Co.*
*Inc. (formerly KKR & Co. Inc.), Henry*
*Kravis, and George Roberts*

E31792B6-E922-48AB-B016-8E9161499B4F : 000030 of 000084

AS : 000030 of 000034

# CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been electronically filed with the Clerk of Franklin County Circuit Court via KY-ECF system, which will send notification of the forgoing filing by email to the following parties, this 8th day of January, 2025:

| | |
|---|---|
| Aaron Silletto | aaron.silletto@ky.gov |
| Justin D. Clark | justind.clark@ky.gov |
| Ann B. Oldfather | aoldfather@oldfather.com |
| R. Sean Deskins | sdeskins@oldfather.com |
| Michael R. Hasken | mhasken@oldfather.com |
| Benjamin F. Hatchen | batchen@oldfather.com |
| Eric L. Lewis | eric.lewis@lbkmlaw.com |
| Mark J. Leimkuhler | mark.leimkuhler@lbkmlaw.com |
| Casey L. Dobson | cdobson@scottdoug.com |
| S. Abraham Kuczaj, III | akuczaj@scottdoug.com |
| Vanessa B. Cantley | vanessa@bccnlaw.com |
| Nathan D. Williams | nathan@bccnlaw.com |
| Patrick E. Markey | patrick@bccnlaw.com |

*Counsel for Plaintiff Commonwealth of Kentucky*

| | |
|---|---|
| Grahmn Morgan | grahmn.morgan@dinsmore.com |
| Seth Church | seth.church@dinsmore.com |
| Erica Ashton | erica.ashton@dinsmore.com |
| Abigail Noebels | anoebels@susmangodfrey.com |
| Barry Barnett | bbarnett@susmangodfrey.com |
| Steven Shepard | sshepard@susmangodfrey.com |

*Counsel for Defendants KKR Group Co. Inc. (formerly known as KKR & Co., L.P.), Henry Kravis, and George Roberts*

| | |
|---|---|
| Grahmn Morgan | grahmn.morgan@dinsmore.com |
| Seth Church | seth.church@dinsmore.com |
| Erica Ashton | erica.ashton@dinsmore.com |
| Michael J. Garvey | mgarvey@stblaw.com |
| Peter E. Kazanoff | pkazanoff@stblaw.com |
| David Elbaum | david.elbaum@stblaw.com |
| Sara A. Ricciardi | sricciardi@stblaw.com |
| Alison Sher | alison.sher@stblaw.com |

*Counsel for Defendants Prisma Capital Partners LP, Girish Reddy, PAAMCO Prisma, LLC (formerly known as Pacific Alternative Asset Management Company, LLC), and Jane Buchan*

31

Donald J. Kelly                dkelly@wyattfirm.com
Sean Williamson                swilliamson@wyattfirm.com
Victoria Boland Fuller         vfuller@wyattfirm.com
Brad S. Karp                   bkarp@paulweiss.com
Andrew J. Ehrlich              aehrlich@paulweiss.com
Brette Tannenbaum              btannenbaum@paulweiss.com
David P. Friedman              dfriedman@paulweiss.com
*Counsel for Defendants Blackstone Inc. (formerly known as The Blackstone Group Inc.), Blackstone Alternative Asset Management, L.P. Stephen A. Schwarzman, and J. Tomilson Hill*

Charles E. English, Jr.        benglish@elpolaw.com
E. Kenly Ames                  kames@elpolaw.com
Steven G. Hall                 shall@bakerdonelson.com
*Counsel for Defendants Cavanaugh Macdonald Consulting, LLC, Thomas Cavanaugh, Todd Green, and Alisa Bennett*

Thad M. Barnes                 tbarnes@stites.com
Jeffrey S. Moad                jmoad@stites.com
Robin E. McGuffin              rmcguffin@stites.com
*Counsel for Defendants R.V. Kuhns & Associates, Inc., Jim Voytko, and Rebecca A. Gratsinger*

Glenn A. Cohen                 gcohen@derbycitylaw.com
Lynn M. Watson                 watson@derbycitylaw.com
*Counsel for Defendant William Cook*

Richard M. Guarnieri           rguar@truelawky.com
M. Abigail Schueler            aschueler@truelawky.com
*Counsel for Defendants Bobbie D. Henson and Randy Overstreet*

John H. Dwyer, Jr.             john.dwyerjr@wilsonelser.com
Sheryl Hammond                 sheryl.hammond@wilsonelser.com
*Counsel for Defendant Timothy Longmeyer*

Andrew Pellino                 apellino@dbllaw.com
Derek Miles                    dmiles@dbllaw.com
*Counsel for Defendant MaryAnne H. Elliott, Executrix of Estate of Thomas K. Elliott*

John W. Phillips               jphillips@ppoalaw.com
Susan D. Phillips              sphillips@ppoalaw.com
Sean Ragland                   sragland@ppoalaw.com
*Counsel for Defendant Jennifer Elliott*

32

Brent L. Caldwell       bcaldwell@caldwelllawyers.com
Noel Caldwell            noelcaldwell@gmail.com
*Counsel for Defendant Vince Lang*

David J. Guarnieri      dguarnieri@mmlk.com
Jason R. Hollon        jhollon@mmlk.com
*Counsel for Defendant David Peden*

J. Mel Camenisch, Jr.    mel.camenisch@rgcmlaw.com
J. Wesley Harned      wes.harned@rgcmlaw.com
*Counsel for Defendant T.J. Carlson*

Michael L. Hawkins     mhawkins@mlhlawky.com
*Counsel for Defendant Brent Aldridge*

Kevin P. Fox          kfox@lgpllc.com
Stewart C. Burch       sburch@lgpllc.com
*Counsel for Defendant William A. Thielen*

**Courtesy copies to:**
Paul C. Harnice        paul.harnice@skofirm.com
Christopher E. Schaefer   christopher.schaefer@skofirm.com
*Counsel for Kentucky Public Pensions Authority*

W. Eric Branco         eric@jbbfirm.com;
*Counsel for County Employees Retirement System*

Janet P. Jakubowicz     janet.jakubowicz@dentons.com
Benjamin J. Lewis      ben.lewis@dentons.com;
*Counsel for Kentucky Retirement Systems*

Michelle C. Lerach      michelle@mcllawgroup.com
Albert Y. Chang        achang@bottinilaw.com
Charles J. LaDuca      charlesl@cuneolaw.com
R. Michael Smith       mike@cuneolaw.com
Claire A. Esmonde      cesmonde@cuneolaw.com
Jeffrey M. Walson      jeff@walsonlcm.com
*Counsel for Tia Taylor, Ashley Hall-Nagy, Bobby Estes and Jacob Walson*

*/s/ Ann B. Oldfather*

33

E31792B6-E922-48AB-B016-8E9161499B4F : 000033 of 000084

AS : 000033 of 000034

## ATTACHMENTS TO JOINT MOTION

**EXHIBIT 1**        Executed Settlement Agreement dated December 20, 2024

  with its Exhibit A      Form for Agreed Approval Order [unsigned]

**EXHIBIT 2**        Affidavit of the Honorable Layn Phillips

Filed          20-CI-00590 01/08/2025          Kathryn Marshall, Franklin Circuit Clerk

Filed          20-CI-00590 01/08/2025          Kathryn Marshall, Franklin Circuit Clerk

E31792B6-E922-48AB-B016-8E9161499B4F : 000035 of 000084

# EXHIBIT 1

and its included "Exhibit A" [unsigned form for agreed Approval Order]

EXH : 000001 of 000033

Filed   20-CI-00590 01/08/2025   Kathryn Marshall, Franklin Circuit Clerk

### SETTLEMENT AGREEMENT BETWEEN AND AMONG
### THE COMMONWEALTH OF KENTUCKY, THE PRISMA-PAAMCO PARTIES, THE KKR & CO. INC. PARTIES, THE BLACKSTONE PARTIES AND THE KPPA ENTITY

This Settlement Agreement ("Settlement Agreement") is between and among the Commonwealth of Kentucky (the "Commonwealth"); KKR Group Co. Inc. (formerly KKR & Co. Inc.), Henry Kravis, and George Roberts (the "KKR & Co. Inc. Parties"); PAAMCO Prisma, LLC, Jane Buchan, Prisma Capital Partners LP ("Prisma"), and Girish Reddy (the "PAAMCO-Prisma Parties"); Blackstone Inc., Blackstone Alternative Asset Management L.P. ("BAAM"), Stephen A. Schwarzman, and J. Tomilson Hill (the "Blackstone Parties") (together with the PAAMCO-Prisma Parties and the KKR & Co. Inc. Parties, the "Settling Defendants"); and Kentucky Public Pensions Authority ("KPPA"), County Employees Retirement System ("CERS"), and Kentucky Retirement Systems ("KRS") (together with KPPA and CERS, the "KPPA Entity") (all collectively, the "Parties").

The Parties have each determined that this Settlement Agreement is in his, her or its best interests and intend (1) to fully and finally resolve all claims between and among them and their respective Related Parties (as defined below) in the actions captioned *Commonwealth v. KKR & Co. Inc., et al.*, Civil Action Nos. 20-CI-590 (the "590 Action"), 21-CI-00348 (the "348 Action") and 24-CI-354 (the "354 Action," which shall be deemed included in references to the 590 Action) (collectively, the "Fund-of-Funds Litigation") and all Related Litigations (as defined below); (2) to permanently and completely release and discharge the Released Claims (as defined below); and (3) that this Settlement Agreement is and shall be an enforceable, binding agreement.

### IT IS THEREFORE AGREED AS FOLLOWS:

1. ***Approvals of the KPPA Entity and the Franklin County Circuit Court.*** Each of the following is a condition precedent to any further obligations under this Settlement Agreement:

   a. ***Approval of Boards of KPPA Entity.*** Before this Settlement Agreement is submitted to the Franklin County Circuit Court in the Approval Motion (as defined below), the Settlement Agreement must be formally approved and consented to by the three (3) boards of the KPPA Entity (the "Boards"). Unless otherwise agreed in writing by the Parties, if all three Boards do not formally approve and consent to the Settlement Agreement within ten (10) business days after the full execution of this Settlement Agreement, this Settlement Agreement shall terminate in accordance with Paragraph 13.

   b. ***Approval Motion and Order By Franklin County Circuit Court.*** Within three (3) calendar days following the timely approval of and consent to this Settlement Agreement by the Boards of the KPPA Entity, the Commonwealth and the Settling Defendants shall jointly file in the 590 Action an Approval Motion (as defined in Paragraph 15(a) below) and a proposed Approval Order in the form attached as Exhibit A to this Settlement Agreement and request that the Approval Motion be set for hearing at the earliest opportunity on a mutually convenient date for the Parties ("Approval Hearing"). Simultaneously, the Commonwealth and the Settling Defendants shall provide notice in *Taylor v. KKR & Co. Inc.*, Civil Action No. 21-CI-00645 in the

1

Filed          20-CI-00590 01/08/2025          Kathryn Marshall, Franklin Circuit Clerk

Franklin County Circuit Court ("*Taylor 1*") and *Taylor v. KKR & Co. Inc*., No. 3:21-cv-00029 (E.D. Ky.) ("*Taylor 2*") (collectively with *Taylor 1*, the "*Taylor Actions*") notifying the named plaintiffs in those actions of the Settlement Agreement, the Approval Motion, and the Approval Hearing and indicating that the Parties do not object to the named plaintiffs in those actions appearing and being heard at the Approval Hearing in the 590 Action regarding whether the Settlement Agreement should be approved and the Approval Order entered.

2. ***Effective Date.*** The Effective Date of this Settlement Agreement shall be the date on which the proposed Approval Order in the form attached as Exhibit A to this Settlement Agreement is entered by the Franklin County Circuit Court.

3. ***Escrow.*** Within thirty (30) calendar days after the Effective Date ("Escrow Funding Date"), the Settling Defendants collectively shall pay or cause to be paid into an escrow account to be established pursuant to an Escrow Agreement (the "Escrow Account") a single, lump sum amount of $227.5 million (the "Settlement Recovery"); *provided, however*, the Settling Defendants shall receive a dollar for dollar credit against the amount of the Settlement Recovery payable into the Escrow Account equal to the certified value of the remaining funds and assets held in reserve by Daniel Boone Fund LLC as of the Escrow Funding Date ("Daniel Boone Fund Reserve"). Prisma shall maintain the Daniel Boone Fund Reserve in accordance with Paragraph 4. Other than as necessary to cover fees and expenses under the Escrow Agreement or Paragraph 4 below, no distributions shall be made from the Escrow Account or the Daniel Boone Fund Reserve other than as permitted under Paragraph 5.

4. ***Status Quo Agreement as to Daniel Boone Fund Reserve***. Prisma shall maintain the Daniel Boone Fund Reserve in accordance with the following requirements, which are consistent with limitations under the Status Quo Order in *Prisma Capital Partners L.P. v. Daniel Boone Fund LLC*, Delaware Court of Chancery, No. 2019-0266 ("Delaware Status Quo Order").

   a. The Daniel Boone Fund Reserve shall be invested in a money market fund that invests exclusively in U.S. Treasury securities unless otherwise agreed in writing by Prisma and the KPPA Entity.

   b. Prisma and Daniel Boone Fund LLC will continue to respond, within five days, to the KPPA Entity's reasonable written requests for information regarding the status of the Daniel Boone Fund Reserve, including the balance of cash and cash equivalents held by the Daniel Boone Fund Reserve.

   c. After providing five days' prior written notice to the KPPA Entity, Prisma may authorize Daniel Boone Fund LLC to pay from the Daniel Boone Fund Reserve necessary advisory, administrative and operational expenses incurred by Daniel Boone Fund LLC, which, for the avoidance of doubt, shall not include any management or performance fees for the benefit of Prisma or payment of litigation counsel fees and expenses.

   d. The Daniel Boone Fund Reserve, including cash generated from the future liquidation of, or on account of distributions from, existing Daniel Boone Fund Reserve investments and all interest accrued on funds held within the Daniel Boone Fund Reserve, shall be maintained by Daniel Boone Fund LLC pending distribution in accordance with Paragraph 5 or, if this Settlement Agreement terminates, the Delaware Status Quo Order.

5. ***Distribution of Escrow Account and Daniel Boone Fund Reserve.*** The Settlement Recovery

shall be distributed from the Escrow Account and the Daniel Boone Fund Reserve as follows:

    a. Within seven (7) calendar days after an Event Trigger, (1) the Settling Defendants shall provide Notice in the form of the Event Trigger Release Instruction (as defined in the Escrow Agreement) to the Escrow Agent to cause the distribution from the Escrow Account to the general fund of the Commonwealth or as otherwise directed by the Attorney General all funds held in the Escrow Account, including any interest accrued or investment returns less necessary fees and amounts under the Escrow Agreement; and (2) Daniel Boone Fund LLC shall distribute to the KPPA Entity or its designee(s) all assets held within the Daniel Boone Fund Reserve, inclusive of any interest or investment returns, less any outstanding fees and expenses payable under Paragraph 4 and with the exception of a holdback of $500,000 which shall be used to pay for Daniel Boone Fund LLC's wind down and final audit in accordance with the requirements of the Investment Advisers Act of 1940; *provided, however,* that any holdback amount shall be distributed within two (2) business days following completion of that audit; or

    b. Within seven (7) calendar days after a Timing Trigger, the Settling Defendants shall jointly provide Notice in the form of the Termination Release Instruction (as defined in the Escrow Agreement) to the Escrow Agent to cause the distribution from the Escrow Account to an account or accounts to be designated by the Settling Defendants all funds held in the Escrow Account less necessary fees and amounts under the Escrow Agreement; or

    c. Within seven (7) calendar days after a Court Trigger, the Settling Defendants shall jointly provide Notice in the form of the Termination Release Instruction to the Escrow Agent to cause the distribution from the Escrow Account to an account or accounts to be designated by the Settling Defendants all funds held in the Escrow Account less necessary fees and amounts under the Escrow Agreement.

6.   *Notice of Settlement Recovery Payment.* Pursuant to the Approval Order, upon distribution of all funds held in the Escrow Account and the Daniel Boone Fund Reserve pursuant to Paragraph 5(a) following an Event Trigger, the Parties shall notify the Court that the Settlement Recovery has been paid and that the dismissal of all claims against the Settling Defendants is effective and with prejudice, with each Party to bear his, her, or its own costs and attorney fees. Within seven (7) calendar days after the releases become effective pursuant to Paragraph 7, the Parties shall also file dismissals with prejudice of all claims in all remaining Fund-of-Funds Litigation and Related Litigations.

7.   *Releases.* The following releases are effective upon receipt by the Commonwealth and the KPPA Entity of the funds to be distributed from the Escrow Account and the Daniel Boone Fund Reserve following an Event Trigger pursuant to Paragraph 5(a):

    a. The Commonwealth, on behalf of itself, all of its departments, commissions, agencies, political subdivisions, citizens, taxpayers, employees, agents, officers, insurers, attorneys, and pension plan members or beneficiaries of any and all tiers and classifications to the extent any of them have asserted or may seek to assert claims on behalf of, or seek recovery for or derivative of injury to, the Commonwealth or any of its departments, commissions, agencies, or political subdivisions, including but not limited to the KPPA Entity or any of the plans, trusts, systems, pension funds, or tiers managed by it or its predecessors (collectively, "Commonwealth Releasors"),

3

Filed    20-CI-00590 01/08/2025    Kathryn Marshall, Franklin Circuit Clerk

knowingly and voluntarily waive, release forever, and covenant not to assert any and all Released Claims that the Commonwealth Releasors ever asserted, now assert, could have asserted or hereafter may assert against (i) the KKR & Co. Inc. Parties and their respective Related Parties ("KKR & Co. Inc. Releasees"); (ii) the PAAMCO-Prisma Parties and their respective Related Parties ("PAAMCO-Prisma Releasees"); (iii) the Blackstone Parties and their respective Related Parties ("Blackstone Releasees"); and (iv) the KPPA Entity and their respective Related Parties ("KPPA Entity Releasees"). The Commonwealth Releasors acknowledge that they may hereafter discover facts in addition to or different from those which they now believe to be true with respect to the allegations in the Fund-of-Funds Litigation and the Related Litigations and/or Released Claims, but agree that they have taken that possibility into account in entering into this Settlement Agreement and that this Settlement Agreement shall be and remain in effect as a full, complete and general release of each and every released matter set forth above, and the Commonwealth Releasors waive the protections of any statute or common law rule that could otherwise render the releases of unknown claims ineffective.

b.  The KPPA Entity, on behalf of themselves, their predecessors, and any of their respective former and current departments, committees, divisions, boards, trustees, officers, employees, agents, insurers, attorneys, and any and all plans, trusts, systems, pension funds, and tiers whose interests any of the KPPA Entity administers and/or oversees, and on behalf of any pension plan members or beneficiaries of any and all tiers and classifications to the extent any of them have asserted or may seek to assert claims on behalf of, or seek recovery for or derivative of injury to, the KPPA Entity, its plans, trusts, systems, pension funds, or tiers (collectively, "KPPA Entity Releasors"), knowingly and voluntarily waives, releases forever, and covenants not to assert any and all Released Claims that the KPPA Entity Releasors ever asserted, now assert, could have asserted or hereafter may assert against (i) the Commonwealth and its respective Related Parties ("Commonwealth Releasees"); (ii) the KKR & Co. Inc. Releasees; (iii) the PAAMCO-Prisma Releasees; and (iv) the Blackstone Releasees. The KPPA Entity Releasors acknowledge that they may hereafter discover facts in addition to or different from those which they now believe to be true with respect to the allegations in the Fund-of-Funds Litigation and the Related Litigations and/or Released Claims, but agree that they have taken that possibility into account in entering into the Settlement Agreement and that the Settlement Agreement shall be and remain in effect as a full, complete and general release of each and every released matter set forth above, and the KPPA Entity Releasors waive the protections of any statute or common law rule that could otherwise render the releases of unknown claims ineffective.

c.  The PAAMCO-Prisma Parties on behalf of themselves and any of their respective parents, affiliates, successors, assigns, and any of their respective present or former partners, principals, managing directors, shareholders, employees, agents, directors, officers, insurers and attorneys (collectively, "PAAMCO-Prisma Releasors") knowingly and voluntarily waive, release forever, and covenant not to assert any and all Released Claims that the PAAMCO-Prisma Releasors ever asserted, now assert, could have asserted or hereafter may assert against (i) the Commonwealth Releasees; (ii) the KPPA Entity Releasees; (iii) the KKR & Co. Inc. Releasees; and (iv) the

4

Filed                    20-CI-00590 01/08/2025                    Kathryn Marshall, Franklin Circuit Clerk

Blackstone Releasees. The PAAMCO-Prisma Releasors acknowledge that they may hereafter discover facts in addition to or different from those which they now believe to be true with respect to the allegations in the Fund-of-Funds Litigation and the Related Litigations and/or Released Claims, but agree that they have taken that possibility into account in entering into the Settlement Agreement and that the Settlement Agreement shall be and remain in effect as a full, complete and general release of each and every released matter set forth above, and the PAAMCO-Prisma Releasors waive the protections of any statute or common law rule that could otherwise render the releases of unknown claims ineffective. For the avoidance of doubt, the PAAMCO-Prisma Releasors expressly reserve and do not release any demands, obligations and causes of action against any party not expressly identified by name or description as either (i) the Commonwealth Releasees; (ii) the KPPA Entity Releasees; (iii) the KKR & Co. Inc. Releasees; and (iv) the Blackstone Releasees.

d. The KKR & Co. Inc. Parties on behalf of themselves and any of their respective parents, affiliates, successors, assigns, and any of their respective present or former partners, principals, managing directors, shareholders, employees, agents, directors, officers, insurers and attorneys (collectively, "KKR & Co. Inc. Releasors") knowingly and voluntarily waive, release forever, and covenant not to assert any and all Released Claims that the KKR & Co. Inc. Releasors ever asserted, now assert, could have asserted or hereafter may assert against (i) the Commonwealth Releasees; (ii) the KPPA Entity Releasees; (iii) the PAAMCO-Prisma Releasees; and (iv) the Blackstone Releasees. The KKR & Co. Inc. Releasors acknowledge that they may hereafter discover facts in addition to or different from those which they now believe to be true with respect to the allegations in the Fund-of-Funds Litigation and the Related Litigations and/or Released Claims, but agree that they have taken that possibility into account in entering into the Settlement Agreement and that the Settlement Agreement shall be and remain in effect as a full, complete and general release of each and every released matter set forth above, and the KKR & Co. Inc. Releasors waive the protections of any statute or common law rule that could otherwise render the releases of unknown claims ineffective. For the avoidance of doubt, the KKR & Co. Inc. Releasors expressly reserve and do not release any demands, obligations and causes of action against any party not expressly identified by name or description as either (i) the Commonwealth Releasees; (ii) the KPPA Entity Releasees; (iii) the PAAMCO-Prisma Releasees; and (iv) the Blackstone Releasees.

e. The Blackstone Parties on behalf of themselves and any of their respective parents, affiliates, successors, assigns, and any of their respective present or former partners, principals, managing directors, shareholders, employees, agents, directors, officers, insurers and attorneys (collectively, "Blackstone Releasors") knowingly and voluntarily waive, release forever, and covenant not to assert any and all Released Claims that the Blackstone Releasors ever asserted, now assert, could have asserted or hereafter may assert against (i) the Commonwealth Releasees; (ii) the KPPA Entity Releasees; (iii) the PAAMCO-Prisma Releasees; and (iv) the KKR & Co. Inc. Releasees. The Blackstone Releasors acknowledge that they may hereafter discover facts in addition to or different from those which they now believe to be true with respect to the allegations in the Fund-of-Funds Litigation and the Related Litigations and/or Released Claims, but agree that they have taken that possibility into account in

Filed                    20-CI-00590 01/08/2025                    Kathryn Marshall, Franklin Circuit Clerk

Filed                20-CI-00590 01/08/2025              Kathryn Marshall, Franklin Circuit Clerk

entering into the Settlement Agreement and that the Settlement Agreement shall be and
remain in effect as a full, complete and general release of each and every released
matter set forth above, and the Blackstone Releasors waive the protections of any
statute or common law rule that could otherwise render the releases of unknown claims
ineffective.  For the avoidance of doubt, the Blackstone Releasors expressly reserve
and do not release any demands, obligations and causes of action against any party not
expressly identified by name or description as either (i) the Commonwealth Releasees;
(ii) the KPPA Entity Releasees; (iii) the PAAMCO-Prisma Releasees; and (iv) the
KKR & Co. Inc. Releasees.

8. ***Reservation of Rights by the Commonwealth and the KPPA Entity.***  The Commonwealth
expressly reserves and does not release any demands, obligations and causes of action against
any person or entity not expressly identified by name or description as either a Settling
Defendant, a KKR & Co. Inc. Releasee, a PAAMCO-Prisma Releasee, a Blackstone Releasee,
or a KPPA Entity Releasee.  This reservation includes but is not limited to those claims which
have been made by the Commonwealth against any person or entity not expressly identified
by name or description as a Settling Defendant, a KKR & Co. Inc. Releasee, a PAAMCO-
Prisma Releasee, a Blackstone Releasee, or a KPPA Entity Releasee released in Paragraph 7,
and also includes claims which could be made by the Commonwealth against any person or
entity other than these Settling Defendants, KKR & Co. Inc. Releasees, PAAMCO-Prisma
Releasees, Blackstone Releasees, or KPPA Entity Releasees but have not yet been asserted,
and in each such instance such claims are expressly reserved by the Commonwealth.  The
KPPA Entity expressly reserves and does not release any demands, obligations and causes of
actions made or which could have been made against any person or entity not expressly
identified by name or description as a Settling Defendant, a KKR & Co. Inc. Releasee, a
PAAMCO-Prisma Releasee, a Blackstone Releasee, or a Commonwealth Releasee released in
Paragraph 7 above.

9. ***Dismissal of Taylor Actions Claims.***  By entering into this Settlement Agreement and
providing the Releases in Paragraph 7, the Commonwealth and the KPPA Entity hereby
exercise control over to the fullest extent of their legal authority all Released Claims asserted
in the *Taylor Actions* that seek collective, plan-wide, trust-wide, system-wide, pension-fund-
wide, or tier-wide relief on behalf of or for the KPPA Entity and/or the plans, trusts, systems,
pension funds, or tiers administered or overseen by it or that allege individual injuries that are
derivative of alleged injuries to the KPPA Entity and/or the plans, trusts, systems, pension
funds, or tiers administered or overseen by it.  Such claims shall be deemed released as
provided under Paragraph 7.  The Approval Order shall, effective immediately upon its entry,
permanently bar and estop individual members and beneficiaries, including the plaintiffs in the
*Taylor Actions*, from prosecuting Released Claims that seek collective, plan-wide, trust-wide,
system-wide, pension-fund-wide, or tier-wide relief on behalf of or for the KPPA Entity and/or
the plans, trusts, systems, pension funds, or tiers administered or overseen by it or that allege
individual injuries that are derivative of alleged injuries to the KPPA Entity and/or the plans,
trusts, systems, pension funds, or tiers administered or overseen by it.  The Settling Defendants
shall promptly seek orders enforcing the Approval Order and dismissing with prejudice any
and all such claims in the *Taylor Actions* against the Settling Defendants and any of their
Related Parties named in those actions.  The Commonwealth shall support the Settling
Defendants' application to schedule the Settling Defendants' motion to dismiss *Taylor 1* and
enforce the Approval Order in both *Taylor Actions* by filing an amicus position or its

Filed                20-CI-00590 01/08/2025              Kathryn Marshall, Franklin Circuit Clerk

equivalent.  The Commonwealth shall also file, to the extent allowed by any applicable rules of procedure, an amicus position or its equivalent in the Settling Defendants' appeals in *Taylor 1*.  In the event of a termination pursuant to Paragraph 13, the bar order pursuant to this Paragraph shall be null, void, and no longer of legal effect.  Notwithstanding anything in this Settlement Agreement to the contrary, the applicability of the releases set forth in Paragraph 7 to any Released Claims that have been asserted or could be asserted by any individual members or beneficiaries, including the plaintiffs in the *Taylor Actions*, are limited to such claims (a) seeking collective, plan-wide, trust-wide, system-wide, pension-fund-wide, or tier-wide relief on behalf of or for any Commonwealth Releasor or KPPA Entity Releasor and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by the KPPA Entity or (b) that allege individual injuries that are derivative of alleged injuries to any (i) Commonwealth Releasor, other than any Commonwealth Releasor acting in his or her capacity as an individual, or (ii) any KPPA Entity Releasor, other than any KPPA Entity Releasor acting in his or her capacity as an individual, and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by the KPPA Entity as set forth in this Paragraph 9.

10. ***Interim stay of all Kentucky litigation against the Settling Defendants and/or their Related Parties in which the Commonwealth or the KPPA Entity is a party.***  The Parties shall cooperate as necessary to jointly notify the presiding courts in all Fund-of-Funds Litigation that the Commonwealth, the KPPA Entity, the PAAMCO-Prisma Parties, the KKR & Co. Inc. Parties, and the Blackstone Parties have reached a global settlement that remains subject to certain conditions, including final court approval and other contingencies, and seek an interim stay/continuance of all proceedings as between the Parties to facilitate implementation of this Settlement Agreement.  The Parties shall also cooperate and take all reasonable steps in an attempt to ensure that the Supreme Court Appeals — captioned as *Daniel Boone Fund, LLC v. Commonwealth*, No. 2024-SC-0093; *KKR & Co. Inc. v. Commonwealth*, No. 2024-SC-0094; *PAAMCO Prisma, LLC v. Commonwealth*, No. 2024-SC-0095; and *Blackstone Alternative Asset Management L.P. v. Commonwealth*, No. 2024-SC-0096 — are preserved pending distributions under Paragraph 5, including in the event necessary, briefing the Supreme Court Appeals in parallel to implementation of the Settlement Agreement.

11. ***Interim stay of Related Litigations.***  The Parties shall cooperate in good faith to promptly take all reasonably necessary steps to stay and preserve all proceedings as between the Parties and/or their Related Parties in the following litigations pending outside Franklin County Circuit Court:

   a. *Prisma Capital Partners LP v. Daniel Boone Fund LLC*, No. 2019-0266, in the Delaware Court of Chancery;

   b. *Prisma Capital Partners LP v. Board of Trustees of the Kentucky Retirement Systems*, No. 2019-0267, in the Delaware Court of Chancery;

   c. *PAAMCO Prisma, LLC v. Board of Trustees of the Kentucky Retirement Systems*, No. 30-2019-01062341-CV-BC-CXC, in the Superior Court of California, Orange County;

   d. *KKR & Co. Inc. v. Daniel Boone Fund LLC*, No. 2021-0998-JRS, in the Delaware Court of Chancery;

   e. *Blackstone Alternative Asset Management L.P. v. KPPA, et al.*, No. 2023-SC-0354-D, in the Kentucky Supreme Court;

7

f. *Blackstone Alternative Asset Management L.P. v. Harris*, No. 3:19-cv-0029-GFVT (E.D. Ky.), in the Eastern District of Kentucky; and

g. Any and all appellate proceedings, including appeals, motions for discretionary review, or petitions for writs of prohibition or mandamus related to one or more of the actions in a, b, c, d, e, and f above (together with the matters identified in subparts a. through f. of this section, the "Related Litigations").

12. **Notices**. Notice required under this Settlement Agreement ("Notice") shall be in writing and shall be sent by electronic mail ("e-mail") and by overnight delivery with a reputable national overnight delivery service to all of the below recipients and shall be deemed delivered on the date of the e-mail transmission.

To the Commonwealth:

Justin Clark
Aaron Silletto
Kentucky Office of Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
justind.clark@ky.gov
aaron.silletto@ky.gov

With a copy to:

Ann Oldfather
OLDFATHER LAW FIRM PLLC
1330 South Third Street
Louisville, Kentucky 40208
aoldfather@oldfather.com

To the KPPA Entity:

Paul C. Harnice
Christopher Schaefer
STOLL KEENON OGDEN PLLC
201 W. Main Street
Frankfort, Kentucky 40601

To the KKR & Co. Inc. Parties:

Katie Sudol
Ellen Frye
30 Hudson Yards
New York, New York 10001
Katie.Sudol@kkr.com

8

Ellen.Frye@kkr.com

    <u>With a copy to</u>:

    Grahmn N. Morgan
    DINSMORE & SHOHL LLP
    100 W. Main Street, Suite 900
    Lexington, Kentucky 40507
    grahmn.morgan@dinsmore.com

    -and-

    Barry Barnett
    SUSMAN GODFREY LLP
    1000 Louisiana Street, Suite 5100
    Houston, TX 77002
    bbarnett@susmangodfrey.com

To the PAAMCO-Prisma Parties:

Polly Koop
Wilson Tran
PAAMCO Prisma
660 Newport Center Drive, Suite 930
Newport Beach, CA 92660
PKoop@paamcoprisma.com
WTran@paamcoprisma.com

    <u>With a copy to</u>:

    Grahmn N. Morgan
    DINSMORE & SHOHL LLP
    100 W. Main Street, Suite 900
    Lexington, Kentucky 40507
    grahmn.morgan@dinsmore.com

    -and-

    Michael J. Garvey
    Peter E. Kazanoff
    SIMPSON THACHER & BARTLETT LLP
    425 Lexington Avenue
    New York, New York 10017
    mgarvey@stblaw.com
    pkazanoff@stblaw.com

E31792B6-E922-48AB-B016-8E9161499B4F : 000044 of 000084

EXH : 000010 of 000033

Filed                20-CI-00590 01/08/2025            Kathryn Marshall, Franklin Circuit Clerk

To the Blackstone Parties:

Peter Koffler
Athena Cheng
Blackstone Inc.
345 Park Ave.
New York, New York 10154
koffler@blackstone.com
athena.cheng@blackstone.com

> <u>With a copy to:</u>
>
> Donald J. Kelly
> WYATT, TARRANT & COMBS, LLP
> 400 West Market Street, Suite 2000
> Louisville, KY 40202
> dkelly@wyattfirm.com
>
> -and-
>
> Brad S. Karp
> Andrew J. Ehrlich
> PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
> 1285 Avenue of the Americas
> New York, NY 10019
> Telephone: (212) 373-3000
> bkarp@paulweiss.com
> aehrlich@paulweiss.com

13. **Termination.**  Unless otherwise agreed in writing by the Parties, this Settlement Agreement shall terminate (1) if the Approval Motion is denied or the Franklin County Circuit Court declines to enter an Approval Order substantially in the form attached as Exhibit A to this Settlement Agreement; or (2) upon a Timing Trigger or a Court Trigger.  Upon termination, this Settlement Agreement shall be void, and the Parties shall be deemed to have reverted to their respective statuses in the Fund-of-Funds Litigation and Related Litigations as they exist as of the date of this Settlement Agreement for all purposes, including the application of any statute of limitations defense later asserted by any Settling Defendant in any Fund-of-Funds Litigation or Status Quo Ante Action (as defined below) (which statute of limitations defense for the sake of clarity shall not include in the running of the limitations period the time between the date of this Settlement Agreement and its termination).  In the event the Settlement Agreement terminates pursuant to this paragraph, the Parties shall cooperate in good faith to promptly and jointly take all reasonably necessary steps to vacate the final judgment set forth in the Approval Order in all respects and to reinstate the 590 Action and the 354 Action, including the Commonwealth's claims against the Settling Defendants in those actions, in the Franklin County Circuit Court.  In the event the 590 Action and the 354 Action, and/or the Commonwealth's claims against the Settling Defendants in those actions, are not or cannot be

10

reinstated in the Franklin Circuit Court following termination of this Settlement Agreement, the Parties agree that the Commonwealth may file new complaints identical to its current operative complaints in the 590 Action and the 354 Action in new actions in the Franklin County Circuit Court in which all motions, discovery, and orders (including the consolidation order and any orders on motions to dismiss) from the 590 Action and 354 Action shall be deemed to be equally applicable so that the Parties fully achieve the status quo ante from the 590 Action and the 354 Action in the new actions (collectively, the "Status Quo Ante Action"). In such event a Status Quo Ante Action is filed, the Settling Defendants agree to waive any defense based on res judicata or collateral estoppel in any such Status Quo Ante Action, preserving all other defenses. Prisma shall maintain the Daniel Boone Fund Reserve in accordance with the Delaware Status Quo Order, with the Commonwealth and the KPPA Entity having reserved all rights to relief relating to the Daniel Boone Fund Reserve. Subject to the foregoing reservation of rights by the Commonwealth and the KPPA Entity, notwithstanding any other provision in this Settlement Agreement to the contrary, the obligations under this Paragraph 13, as well as Paragraphs 4 and 14(b), shall survive termination.

14. **Miscellaneous Terms**.

   a. *No Admission of Liability.* The PAAMCO-Prisma Parties, the KKR & Co. Inc. Parties, and the Blackstone Parties maintain that they are not liable for the claims asserted against them, that they have good and meritorious defenses to those claims, that the KPPA Entity's investments in Daniel Boone Fund LLC, Newport Colonels LLC, and Henry Clay Fund LLC were, at all times, managed in accordance with the governing contracts and applicable law, and those investments outperformed benchmarks established in the contracts. They assert and maintain that they are entering into this Settlement Agreement solely to avoid further legal expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to put to rest this controversy. They deny any liability, wrongdoing, or damage, and this Settlement Agreement shall not be deemed an admission by them of any fault, liability, wrongdoing, damage, or of the validity or infirmity of any claim released pursuant to Paragraph 7. The Parties agree that this Settlement Agreement may not be used or offered in any future proceeding against any of the Parties for any purpose except to enforce the terms of this Settlement Agreement.

   b. *Confidentiality of Settlement Discussions and Cooperation on Public Statements.*

      i. At all times, the confidentiality restrictions of the mediation shall remain binding on all Parties and their representatives and attendees, as to all communications and information exchanged during and in connection with the mediation, including but not limited to drafts of this Settlement Agreement and any prior communications regarding proposed terms. Other than as set forth in the Approval Motion, any prior drafts of any settlement agreement, any prior term sheets, and any prior communications of proposed terms shall be kept strictly confidential by the Parties and shall not be released, published or disseminated and shall not be disclosed or discussed with any persons or entities other than the Parties hereto, their respective Boards, counsel, accountants, tax advisers, insurers, reinsurers, investors, professional representatives, and the Escrow Agent, and, only to the extent required for the fulfillment of their duties

11

to carry out the true and proper oversight of the KPPA Entity, the Public Pension Oversight Board. Prior to the filing of the Approval Motion, no Party shall make any affirmative public statement regarding the existence or terms of the Settlement Agreement.

ii. In addition to the foregoing, any public statements relating to the settlement shall be subject to the following requirements: (a) any such statement shall not be inconsistent with the Approval Motion; (b) any and all references to the aggregate amount of the Settlement Recovery in any and all public statements or publicly accessible documents shall state that the Settlement Recovery includes a distribution to the KPPA Entity of approximately $145 million in assets that the Prisma-managed investment fund was holding in reserve in connection with potential indemnification claims; (c) any press release or other public statement concerning the settlement, whether oral or in writing, shall indicate that the Settling Defendants continue to deny liability with respect to all the Commonwealth's claims and maintain that they have settled solely to avoid the expense, distraction and inconvenience of further litigation; and (d) no press release or other public statement shall state or imply, and no Party shall encourage others to state or imply, whether orally or in writing, that this Settlement constitutes an admission of liability by the Settling Defendants on any issue or claim or an agreement by the Settling Defendants to return management or incentive fees.

iii. In the event that the Parties cannot agree on matters specifically addressed by this subsection 14(b)(ii), such disagreement shall be presented to the mediator, retired United States District Court Judge Phillips, whose view shall be final.

iv. Nothing in the foregoing shall prevent any Party from reporting the content of the Settlement Agreement, the Approval Motion and/or the Approval Order as required (a) in an action by any Party to enforce the provisions of the Settlement Agreement, to the extent reasonably required for the purposes of such enforcement; (b) in response to a court order or legal process; (c) to the extent reasonably required by (1) a request by a government or regulatory authority having jurisdiction over such Party, (2) financial reporting or other regulatory reporting obligations, including financial reporting requirements, securities filings (e.g., Forms 10-Q or 10-K), and federal, state or local tax laws, or (3) law or any legal duty; or (d) by written agreement of the Parties. In the event of any requested disclosure pursuant to legal process, the Party receiving the request for disclosure shall notify the other Parties herein within three (3) business days and afford them an opportunity to seek to obtain the continued confidentiality of the Settlement Agreement and any related documents and communications. In the event any disclosure of this Settlement Agreement or related documents and communications is required, the Parties shall use their reasonable best efforts to minimize any such disclosure. The Parties hereby agree that drafts of this Settlement Agreement, any prior settlement agreement, drafts of prior term sheets, and all communications and information exchanged during and in connection with the mediation are entitled to exemption from public disclosure to the full extent permitted by the Kentucky Open Records

12

and Open Meetings Act, and the Parties shall take reasonable steps to cooperate with each other in responding to requests under such provisions and in limiting disclosure thereunder to the extent permissible under applicable law.

c. **_Cooperation_.** The Parties shall cooperate in good faith toward expeditiously achieving the Event Trigger, including by seeking immediate transfer of any new appellate proceedings arising from the Settlement Agreement to the Kentucky Supreme Court pursuant to RAP 17. The Settling Defendants shall diligently prosecute their matter of right appeal from the Court of Appeals' denial of the Settling Defendants' Petition for a Writ of Prohibition in _Taylor 1_ and all subsequent proceedings in good faith and with all appropriate speed to full resolution by a Final non-appealable order. Additionally, the Parties shall cooperate in good faith to effectuate the provisions of this Settlement Agreement, including by fulfilling the Notice obligations in Paragraph 5 and executing any agreements as contemplated herein or other instruments necessary to effectuate the mutual intent of the Parties.

d. **_Remedies_.** The Parties agree and acknowledge that money damages may not be an adequate remedy for any breach of the provisions of this Settlement Agreement and that any Party may in its sole discretion apply to any court of law or equity within the Commonwealth of Kentucky (without posting any bond or deposit) for money damages, specific performance, and/or other injunctive relief to enforce or prevent any violations of any provision of this Settlement Agreement.

e. **_Signatories have authority to sign._** By their signatures below, the Parties and their signees represent that they have read this Settlement Agreement, understand, agree, and have authority to sign below on behalf of a Party subject to this Settlement Agreement. The signatory for the Commonwealth further represents that this Settlement Agreement is entered into by the Commonwealth, on behalf of itself, its subsidiary agencies, citizens acting in a derivative capacity, and other Commonwealth Releasors; that the Attorney General is acting within his constitutional, common law, and statutory authority to represent and bind the Commonwealth; and that the terms of the Settlement Agreement are consistent with the applicable laws of the Commonwealth. The signatory for the KPPA Entity further represents that, upon the approvals required under Paragraph 1, this Settlement Agreement is entered into by the Boards of KPPA, CERS, and KRS on behalf of all of the plans, trusts, systems, pension funds, or tiers they administer or oversee and their constituent members and beneficiaries.

f. **_Parties to bear their own costs and attorneys' fees._** Other than as set forth herein, the Parties shall each bear their own costs and attorneys' fees in connection with the mediation, the Settlement Agreement, and all the litigations mentioned herein. The parties to the Fund-of-Funds Litigation shall not dispute in any forum the amount of attorneys' fees determined by the office of the Attorney General to be payable to counsel for the Commonwealth as set forth in its contracts. Any disputes or objections by third parties regarding attorneys' fees payable to counsel for the Commonwealth in connection with this Settlement Agreement, including any appeal regarding the same, shall not have any impact on the finality of the Approval Order and the effectiveness of the releases in the Approval Order or the timing of the Effective Date.

13

g. **Governing law.** This Settlement Agreement shall be governed and enforced in accordance with the laws of the Commonwealth of Kentucky, without regard to its conflict of laws principles, and any dispute hereunder shall be brought exclusively in the Franklin County Circuit Court, in which all Parties consent to jurisdiction and venue (subject to Paragraph 14(b)(iii) above).

h. **Counterparts.** This Settlement Agreement may be executed in counterparts. Each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all the Parties. Signatures by facsimile and/or e-mail shall be deemed as effective as original signatures.

i. **Entire Agreement.** This Settlement Agreement, including Exhibit A, contains the entire agreement between the Parties regarding the subject matter of this Settlement Agreement, and all prior and contemporaneous conversations, contracts, negotiations, discussions, possible and alleged agreements, representations, covenants, warrants and understandings are superseded by, and merged into, this Settlement Agreement.

j. **Amendments.** This Settlement Agreement may be altered or amended only by a writing signed by all Parties hereto.

k. **Deadlines.** If the date for performance of any obligation in this Settlement Agreement expires on a Saturday, Sunday or legal holiday in the Commonwealth of Kentucky, then such performance shall be completed by the next succeeding business day.

15. **Definitions of undefined key terms.**

a. "**Approval Motion**" means a motion by the Commonwealth, joined by the KPPA Entity and Settling Defendants that (i) seeks entry of the Approval Order and (ii) sets forth the Commonwealth's and the KPPA Entity's rationale for the Settlement Agreement. The Approval Motion shall request an interim stay of all other proceedings in Action 590 and Action 354 related to the Settling Defendants.

b. "**Approval Order**" means an order in the 590 Action, as required by KRS 48.005, that is substantially in the form attached as Exhibit A.

c. "**Court Trigger**" means the Settling Defendants' delivery of Notice in accordance with Paragraph 12 prior to an Event Trigger stating that the Settling Defendants elect to terminate the Settlement Agreement following a decision by a court of competent jurisdiction that overturns the Approval Order or deems the Approval Order, including the bar order, in any material respect unenforceable or not applicable to claims in the *Taylor Actions* described in Paragraph 9.

d. "**Event Trigger**" means the Commonwealth's delivery of Notice in accordance with Paragraph 12 following satisfaction of two conditions precedent: (1) the Approval Order is Final; *and* (2) either (x) all claims currently pending against the Settling Defendants in *Taylor 1* are dismissed with prejudice and the dismissal is Final; or (y) a Final ruling that the *Taylor 1* plaintiffs do not have standing or otherwise lack legal authority to continue pursuing claims against the Settling Defendants or their Related Parties for collective, plan-wide, trust-wide, system-wide, pension-fund-wide, tier-wide relief, or relief on behalf of or for the KPPA Entity, otherwise labeled as relief to be paid to the KPPA Entity.

14

E31792B6-E922-48AB-B016-8E9161499B4F : 000049 of 000084

EXH : 000015 of 000033

e.  "***Final***" means an order or judgment of a court of competent jurisdiction with respect to the applicable subject matter which has not been reversed or superseded by a modified or amended order, is not currently stayed, and as to which any right to appeal or seek *certiorari*, review, reargument, stay, or rehearing has expired, and (1) as to which no appeal or petition for *certiorari*, review, reargument, stay, or rehearing is pending, or (2) as to which an appeal has been taken or petition for *certiorari*, review, reargument, stay, or rehearing has been filed and (a) such appeal or petition for *certiorari*, review, reargument, stay, or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which *certiorari*, review, reargument, stay, or rehearing was sought, or (b) the time to appeal further or seek *certiorari*, review, reargument, stay, or rehearing has expired and no such further appeal or petition for *certiorari*, review, reargument, stay, or rehearing is pending.  For the avoidance of doubt, the Approval Order is Final for the purpose of Paragraph 15(d)(1) if (1) no notice of appeal is filed within the deadline set forth in RAP 3 and the Approval Order is not otherwise the subject of litigation or challenge, including via appellate proceedings, in Action 590, up until the time that Paragraph 15(d)(2)(x) or (y) has been fully satisfied, or (2) a joint notice is filed with the Court by all Settling Parties declaring that the Event Trigger has occurred.

f.  "***Released Claims***" are any and all claims, causes of action, covenants, contracts, damages, demands, or obligations of any kind whatsoever, whether legal or equitable, whether presently known or unknown, foreseen or unforeseen, matured or unmatured, of any type whatsoever, whether direct, derivative, taxpayer, contract, tort or statutory, and whether arising under state, federal or common law, including but not limited to claims for breach of fiduciary duty, breach of trust, breach of statutory duty, aiding and abetting any breaches of the foregoing duties or claims for civil conspiracy and joint enterprise, that arise out of or relate in any way to (1) investments by the KPPA Entity and any plans, trusts, systems, pensions funds, and tiers of members they administer and/or oversee in Daniel Boone Fund LLC, Newport Colonels LLC, and/or Henry Clay Fund LLC; (2) the KPPA Entity's absolute return program and search for fund-of-funds managers; (3) the management of, or underlying investments made by, the Daniel Boone Fund LLC, Newport Colonels LLC, and/or Henry Clay Fund LLC, and the funds in which each such LLC invested; (4) any fees (whether characterized as management, performance or otherwise) that were charged to, or incurred by, the Daniel Boone Fund LLC, Newport Colonels LLC, and/or Henry Clay Fund LLC, or any of the underlying investments held by those funds, whether directly or indirectly; (5) the reserve established by Daniel Boone Fund LLC that is the subject of the Delaware Status Quo Order; or (6) all other allegations in all pending litigations arising out of the same nucleus of operative facts that are at issue in the Fund-of-Funds Litigation, the Related Litigations or the *Taylor Actions*.  The binding intent of the Parties is to achieve global peace and accord with respect to any and all Released Claims and the Parties shall use commercially reasonable best efforts to ensure the Settlement Agreement and Approval Order achieve this outcome.  For the avoidance of doubt, the definition of Released Claims does not include any claims against any of Cavanaugh MacDonald Consulting, LLC ("Cavanaugh MacDonald"), and its Related Parties, R.V. Kuhns & Associates, Inc., a/k/a/ RVK, Inc. ("RVK"), and its Related Parties, and/or the Trustees and Officers ("Trustees and Officers") named in the Fund-of-Funds Litigation.

g. "***Related Parties***" are each Party's or non-Party's current and former owners, affiliates, governing boards, officers, directors, trustees, managers, employees, members, shareholders, attorneys, agents, advisors, consultants, predecessors, successors, assigns, insurers and reinsurers.  For purposes of this Settlement Agreement, Daniel Boone Fund LLC is a PAAMCO-Prisma Related Party and a KPPA Entity-Related Party.  Moreover, for the avoidance of doubt, PAAMCO-Prisma Related Parties include Michael Rudzik as well as William Cook and David Peden in their capacities as former Prisma employees.  Subject to the foregoing, Related Parties do not include any named Defendant in the 590 Action or the 354 Action who is not a Settling Defendant in this Settlement Agreement, which non-settling Defendants include, but are but not limited, to Cavanaugh MacDonald and its Related Parties, RVK and its Related Parties, and/or the Trustees and Officers.

h. "***Timing Trigger***" means the Commonwealth's delivery of Notice in accordance with Paragraph 12 prior to an Event Trigger on any of June 30, 2026, December 31, 2026, or a subsequent six-month anniversary of either date, stating that the Commonwealth is electing to terminate the Settlement Agreement because the Event Trigger has not occurred.  The Parties may by written agreement extend or modify the Timing Trigger.

16

Signed on the 20th day of December 2024, with full authority and in order to indicate binding intent pursuant to the terms set forth in this Settlement Agreement.

By: _____
Justin D. Clark
OFFICE OF THE KENTUCKY
   ATTORNEY GENERAL
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601

*Counsel for the Commonwealth of Kentucky*

By: _____
Michael J. Garvey
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017

*Counsel for Prisma Capital Partners LP, Girish Reddy, PAAMCO Prisma, LLC (formerly Pacific Alternative Asset Management Company, LLC), and Jane Buchan*

By: _____
Barry Barnett
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, TX 77002

*Counsel for KKR Group Co. Inc. (formerly KKR & Co. Inc.), Henry Kravis, and George Roberts*

By: _____
Andrew J. Ehrlich
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

*Counsel for Blackstone Alternative Asset Management L.P., Blackstone Inc. (formerly The Blackstone Group, Inc.), Stephen A. Schwarzman, and J. Tomilson Hill*

[Second Signature Page Follows]

E31792B6-E922-48AB-B016-8E9161499B4F : 000052 of 000084

EXH : 000018 of 000033

Signed on the __20th__ day of December 2024, with full authority and in order to indicate binding intent
pursuant to the terms set forth in this Settlement Agreement.

By: _____
Justin D. Clark
OFFICE OF THE KENTUCKY
    ATTORNEY GENERAL
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601

*Counsel for the Commonwealth
of Kentucky*

By: _____
Michael J. Garvey
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017

*Counsel for Prisma Capital Partners LP,
Girish Reddy, PAAMCO Prisma, LLC
(formerly Pacific Alternative Asset
Management Company, LLC), and Jane
Buchan*

By: *Barry Barnett*
Barry Barnett
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, TX 77002

*Counsel for KKR Group Co. Inc.
(formerly KKR & Co. Inc.), Henry
Kravis, and George Roberts*

By: _____
Andrew J. Ehrlich
PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

*Counsel for Blackstone Alternative Asset
Management L.P., Blackstone Inc.
(formerly The Blackstone Group, Inc.),
Stephen A. Schwarzman, and J.
Tomilson Hill*

[Second Signature Page Follows]

By: _____
Jerry W. Powell
*Board Chair for Kentucky Public Pensions Authority*

By: _____
George Cheatham
*Board Chair for County Employees Retirement System*

By: _____
E. Lynn Hampton
*Board Chair for Kentucky Retirement Systems*

E31792B6-E922-48AB-B016-8E9161499B4F : 000054 of 000084

EXH : 000020 of 000033

By: _____
Jerry W. Powell
*Board Chair for Kentucky Public Pensions Authority*

By: _____
George Cheatham
*Board Chair for County Employees Retirement System*

By: _____
E. Lynn Hampton
*Board Chair for Kentucky Retirement Systems*

E31792B6-E922-48AB-B016-8E9161499B4F : 000055 of 000084

EXH : 000021 of 000033

By: _____
Jerry W. Powell
**Board Chair for Kentucky Public Pensions Authority**

By: _____
George Cheatham
**Board Chair for County Employees Retirement System**

By: _____
E. Lynn Hampton
**Board Chair for Kentucky Retirement Systems**

Filed        20-CI-00590 01/08/2025        Kathryn Marshall, Franklin Circuit Clerk

E31792B6-E922-48AB-B016-8E9161499B4F : 000057 of 000084

# EXHIBIT A

to Settlement Agreement [unsigned form for agreed Approval Order]

EXH : 000023 of 000033

# COMMONWEALTH OF KENTUCKY
## FRANKLIN CIRCUIT COURT
## DIVISION TWO
### CASE NOs. 20-CI-00590 and 24-CI-00354

COMMONWEALTH OF KENTUCKY, on
its own behalf and for the benefit of all of its
departments, commissions, agencies, political                    PLAINTIFF
subdivisions, its citizens, taxpayers, and all
pension plan beneficiaries,

v.

KKR & CO. INC., et al.,                                          DEFENDANTS

## [PROPOSED] FINAL ORDER APPROVING SETTLEMENT AGREEMENT

**Whereas**, this matter is before the Court on the Joint Motion to Approve Settlement

Agreement (the "Motion") by (1) the Commonwealth of Kentucky (the "Commonwealth"); (2) the

Kentucky Public Pensions Authority ("KPPA"), the County Employees Retirement System

("CERS"), the Kentucky Retirement System ("KRS") (collectively with each of their respective

Boards of Trustees, the "KPPA Entity"); (3) PAAMCO Prisma, LLC (formerly Pacific Alternative

Asset Management Company, LLC, and hereinafter "PAAMCO"), Jane Buchan, Prisma Capital

Partners LP ("Prisma"), and Girish Reddy (together with PAAMCO, Buchan, and Prisma, the

"PAAMCO-Prisma Parties"); (4) KKR Group Co. Inc. (formerly KKR & Co. Inc.), Henry R.

Kravis, and George R. Roberts (the "KKR & Co. Inc. Parties"); and (5) Blackstone Inc.,

Blackstone Alternative Asset Management L.P. ("BAAM"), Stephen A. Schwarzman, and J.

Tomilson Hill (the "Blackstone Parties") (together with the KKR & Co. Inc. Parties and the

PAAMCO-Prisma Parties, the "Settling Defendants") (all collectively, the "Settling Parties");

**Whereas**, the Settling Parties, having entered into a settlement agreement, dated December

20, 2024 and attached as Exhibit 1 (the "Settlement Agreement"), seek this Court's approval of

the Settlement Agreement and entry of a final order approving the same;

1

**Whereas**, this case consists of two actions that were consolidated on May 1, 2024: *Commonwealth of Kentucky* v. *KKR & Co. Inc.*, Civil Action No. 20-CI-00590 (Franklin County Circuit Court), filed on July 21, 2020 ("*590 Action*"), and *Commonwealth of Kentucky* v. *KKR & Co. Inc.*, Civil Action No. 24-CI-00354 (Franklin County Circuit Court), filed on April 8, 2024 ("*354 Action*");

**Whereas**, in both *590 Action* and *354 Action*, the Commonwealth brought claims against the Settling Defendants, trustees and officers of the KPPA Entity, and several other groups of defendants alleging breach of trust, breach of fiduciary duty, breach of statutory duty, aiding and abetting such breach, participating in a joint enterprise and/or civil conspiracy, and breach of contract arising out of funds of hedge funds investments made by the KPPA Entity with funds managed by certain of the Settling Defendants;

**Whereas**, in both *590 Action* and *354 Action*, the Commonwealth's claims are being prosecuted by and through the Attorney General of the Commonwealth of Kentucky, in his capacity as the Chief Law Officer of the Commonwealth and for the benefit of all of the Commonwealth's departments, commissions, agencies, political subdivisions, citizens, taxpayers, pension plans and trusts, and pension plan members and beneficiaries of any and all tiers and classifications;

**Whereas**, there are currently pending before this Court and the U.S. District Court for the Eastern District of Kentucky, two other actions brought by two substantially overlapping groups of individual plaintiffs (collectively, the "*Taylor* Plaintiffs"), all of whom are individual members of the Tier 3 class pension funds administered and managed by the KPPA Entity: *Taylor* v. *KKR & Co. Inc.*, Civil Action No. 21-CI-00645, filed on August 19, 2021 in the Franklin County Circuit Court ("*Taylor 1*"); and *Taylor* v. *KKR & Co. Inc.*, originally action 21-CI-00020, filed on January

Filed          20-CI-00590 01/08/2025          Kathryn Marshall, Franklin Circuit Clerk

6, 2021 in the Franklin Circuit Court and removed on July 20, 2021 to the U.S. District Court for the Eastern District of Kentucky, No. 3:21-cv-00029 ("*Taylor 2*") (collectively, the "*Taylor Actions*");

**Whereas**, the *Taylor Actions* purport to assert claims arising out of a common nucleus of operative facts as those alleged by the Commonwealth in *590 Action* and *354 Action*, seeking recovery against the Settling Defendants and other defendants for allegedly participating in breach of trust, breach of fiduciary duty, aiding and abetting such breach, and participating in a joint enterprise and/or civil conspiracy and/or pattern of racketeering activity in connection with certain investments made by the KPPA Entity with funds managed by certain of the Settling Defendants;

**Whereas**, the Court had set this matter so that all interested parties, including the *Taylor* Plaintiffs, could be heard regarding the terms of the Settlement Agreement in order to determine whether the Settlement Agreement is fair and reasonable and in the best interests of the Commonwealth, the KPPA Entity, and all plans, trusts, systems, pension funds, and tiers whose interests any of the KPPA Entity administers and/or oversees, and for whose benefit the Commonwealth is suing in the *590 Action* and *354 Action*;

**Whereas**, this Court has duly considered all arguments and objections raised by all interested parties;

**Whereas**, the Court finds that certain of the terms and conditions in the Settlement Agreement are subject to this Court's final approval, specifically those (i) fully and finally resolving all claims in *590 Action* and *354 Action*, and all Related Litigations as defined in the Settlement Agreement, (ii) releasing and discharging the Released Claims pursuant to the terms of the Settlement Agreement, and (iii) imposing a bar order prohibiting any further pursuit of the Released Claims as described in Paragraph 13 of this Order.

3

E31792B6-E922-48AB-B016-8E9161499B4F : 000060 of 000084

EXH : 000026 of 000033

**Whereas**, unless otherwise defined, all terms used herein have the same meaning as set forth in the Settlement Agreement.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**, as follows:

1.      The Court finds that it has jurisdiction over the subject matter of *590 Action* and *354 Action*, including all matters necessary to enter the Approval Order or to interpret or effectuate the terms of the Settlement Agreement.

2.      The Court has reviewed the terms and conditions of the Settlement Agreement, which fully and finally resolves all claims in *590 Action*, *354 Action*, and all Related Litigations. All capitalized terms not defined in this Order are as defined in the Settlement Agreement submitted as Exhibit 1 of this Order.

3.      The Court finds that the Settlement is fair, reasonable and adequate, and in the best interests of the Commonwealth, the KPPA Entity, and all plans, trusts, systems, pension funds, and tiers whose interests any of the KPPA Entity oversees and/or administers, and for whose benefit the Commonwealth is suing in the *590 Action* and *354 Action*.

4.      The Court finds that the Settlement Agreement is the result of good faith, arm's-length negotiations between the Settling Parties, all of which are represented by experienced counsel who fairly and adequately represented the interests of their respective Parties and their Related Parties, and is the product of a mediator's proposal recommended by an experienced, knowledgeable mediator, former United States District Court Judge Layn Phillips.

5.      The Court finds that the Commonwealth, through the Attorney General, is legally authorized to bring this case pursuant to KRS 15.020 as the real party in interest "on its behalf and for the benefit of all its departments, commissions, agencies, political subdivisions, citizens, taxpayers, and pension plan beneficiaries of any and all tiers and classifications" for injuries

4

allegedly caused to "the Commonwealth, its departments, commissions, agencies, political subdivisions, citizens, taxpayers, and all pension plan beneficiaries." Third Am. Compl. ¶ 1; *see also Overstreet* v. *Mayberry*, 603 S.W.3d 244, 265–66 (Ky. 2020). The Court further finds that the Commonwealth, through the Attorney General, has adequately represented the interests of all of its departments, commissions, agencies, political subdivisions, citizens, taxpayers, pension plans and trusts, and pension plan members and beneficiaries of any and all tiers and classifications for whose benefit it is suing in this case.

6.      The Court finds that the Commonwealth Releasors and the KPPA Entity Releasors are legally authorized to enter into the Settlement Agreement and fully and finally resolve and release with prejudice, the Released Claims against the PAAMCO-Prisma Releasees, the KKR & Co. Inc. Releasees, and the Blackstone Releasees pursuant to the terms and conditions of the Settlement Agreement, which Released Claims include the claims in the *Taylor Actions* as described in Paragraph 9 of the Settlement Agreement. *See* KRS 61.645; KRS 15.020; *cf. Overstreet*, 603 S.W.3d at 261 n. 75 (citing KRS 61.645).

7.      The Court finds that the KPPA Entity, having exercised its business judgment, and in compliance with its fiduciary duties, has the authority to determine and has independently concluded that this Settlement Agreement, including the global Releases of the Released Claims therein for the benefit of itself and its members, is in the best interests of the KPPA Entity and all plans, trusts, systems, pension funds, and tiers whose interests any of the KPPA Entity administers and/or oversees and that the KPPA Entity's independent business judgment in this regard is entitled to deference.

8.      The Court finds that the Commonwealth has authority to determine whether this Settlement Agreement, including the global Releases of the Released Claims therein, is fair,

5

reasonable, and adequate to itself and all of its departments, commissions, agencies, political subdivisions, citizens, taxpayers, pension plans and trusts, and pension plan members and beneficiaries of any and all tiers and classifications, whose interests it represents in this litigation, and has made that determination, which is consistent with the KPPA Entity's separate determination that the Settlement Agreement is in the best interests of the KPPA Entity.

9.      Accordingly, the Court finds that the Settling Parties' entry into and performance of the Settlement Agreement shall constitute a full accord and satisfaction of the Released Claims, and shall preclusively release the Settling Defendants from any further liability for the Released Claims in accordance with the terms and conditions of the Settlement Agreement.  The Court further finds that the releases of Released Claims by the Commonwealth Releasors and the KPPA Entity Releasors shall be fully effective releases in all current and future actions upon performance of the terms and conditions of the Settlement Agreement.

10.     The Court finds that all interested parties, including but not limited to the named plaintiffs in the *Taylor Actions*, were provided reasonable notice and an opportunity to be heard regarding the Approval Motion, and that the Court has duly taken their objections, if any, into consideration.

11.     The Court finds that the Commonwealth and the KPPA Entity have adequately established that the distributions of the Settlement Recovery pursuant to the Settlement Agreement is subject to appropriate public accountability and inures to the public benefit of the Commonwealth, the KPPA Entity, and the pension plans and individual members whose interests the KPPA Entity administers and oversees.

12.     For all of the foregoing reasons, the Court hereby APPROVES the Settlement Agreement in all respects, FINDS that the Settlement Agreement is fair, reasonable, and adequate

E31792B6-E922-48AB-B016-8E9161499B4F : 000063 of 000084

EXH : 000029 of 000033

Filed   20-CI-00590 01/08/2025   Kathryn Marshall, Franklin Circuit Clerk

in all regards, and DIRECTS the Settling Parties to consummate the Settlement Agreement in accordance with its terms.

13.     The Court hereby further permanently BARS and ESTOPS all persons or entities from asserting, instituting, maintaining, or participating in, in any forum, any Released Claims against the PAAMCO-Prisma Releasees, the KKR & Co. Inc. Releasees, and the Blackstone Releasees that seek collective, plan-wide, trust-wide, system-wide, pension-fund-wide, or tier-wide relief on behalf of or for the KPPA Entity, their predecessors, and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by them or that allege individual injuries that are derivative of alleged injuries to the KPPA Entity, their predecessors, and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by them.

14.     The Court finds that by entering into and seeking the Court's approval of the Settlement Agreement, the Settling Parties intend to fully and finally resolve all of the claims between them in accordance with the terms and conditions set forth in the Settlement Agreement, including releasing the Released Claims upon distribution of all funds held in the Escrow Account and the Daniel Boone Fund Reserve in accordance with Paragraphs 5(a) and 6 of the Settlement Agreement.  The Court therefore SEVERS all of the claims and causes of action brought against all Settling Defendants from the claims and causes of action brought against all other Defendants. The Court hereby ENTERS THIS FINAL JUDGMENT approving the Settlement Agreement, and adjudicates that the claims asserted in the *590 Action* and *354 Action* against all Settling Defendants are fully and finally resolved subject to the terms and conditions of the Settlement Agreement and dismissed with prejudice effective upon distribution of all funds held in the Escrow Account and the Daniel Boone Fund Reserve in accordance with Paragraphs 5(a) and 6 of the Settlement Agreement.

Filed   20-CI-00590 01/08/2025   Kathryn Marshall, Franklin Circuit Clerk

E31792B6-E922-48AB-B016-8E9161499B4F : 000064 of 000084

EXH : 000030 of 000033

15.     Without affecting the finality of this Judgment, this Court retains continuing jurisdiction for purposes of the administration, interpretation, implementation, and enforcement of the Settlement Agreement and this Order, including but not limited to Paragraph 13 of this Order.

16.     The Settling Parties shall jointly notify the Court in writing upon the distribution of all funds held in the Escrow Account and the Daniel Boone Fund Reserve in accordance with Paragraphs 5(a) and 6 of the Settlement Agreement.

17.     All Parties shall bear their own fees, costs, and expenses.

18.     This order is final and appealable and there is no just cause for delay.  The clerk is hereby directed to serve notice of entry under CR 77.04.

**SO ORDERED**, this _____ day of _____, 2025.


_____
**THOMAS D. WINGATE**
**Judge, Franklin Circuit Court**


**Notice:** All parties

8

Tendered By:

_____
Ann B. Oldfather (KBA 52553)
R. Sean Deskins (KBA 92430)
Michael R. Hasken (KBA 94992)
OLDFATHER LAW FIRM PLLC
1330 South Third Street
Louisville, KY 40208
Telephone: (502) 637-7200
Email: aoldfather@oldfather.com
sdeskins@oldfather.com
mhasken@oldfather.com

Casey L. Dobson
S. Abraham Kuczaj, III
Scott Douglass McConnico, LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
Telephone: (512) 495-6300
Email: cdobson@scottdoug.com
akuczaj@scottdoug.com

Justin D. Clark (KBA 89313)
Aaron J. Silletto (KBA 89305)
Office of the Kentucky Attorney General
1024 Capital Center Drive
Suite 200
Frankfort, KY 40601
Tel: (502) 696-5300
aaron.silletto@ky.gov
justind.clark@ky.gov

Eric L. Lewis
Mark J. Leimkuhler
Lewis Baach Kaufmann Middlemiss PLLC
1101 New York Avenue, NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 833-8900
Email: eric.lewis@lbkmlaw.com
mark.leimkuhler@lbkmlaw.com
chiara.spector@lbkmlaw.com
jessica.buckwalter@lbkmlaw.com

Vanessa B. Cantley (KBA 90279)
Nathan D. Williams (KBA 92172)
Patrick E. Markey (KBA 96502)

_____
Donald J. Kelly
Sean G. Williamson
Victoria Boland Fuller
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY 40202
(502) 589-5235

Brad S. Karp (admitted *pro hac vice*)
Andrew J. Ehrlich (admitted *pro hac vice*)
Brette Tannenbaum (admitted *pro hac vice*)
David P. Friedman (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
*Counsel for Blackstone Alternative Asset Management L.P.; Blackstone Inc.; Stephen A. Schwarzman; and J. Tomilson Hill*

_____
Grahmn N. Morgan
Seth T. Church
Erica A. Ashton
DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, KY 40507
Telephone: 859-425-1010
Facsimile: 859-425-1099
grahmn.morgan@dinsmore.com
seth.church@dinsmore.com
erica.ashton@dinsmore.com

Michael J. Garvey (*pro hac vice*)
Peter E. Kazanoff (*pro hac vice*)
David Elbaum (*pro hac vice*)
Sara Ricciardi (*pro hac vice*)
Alison Sher (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: 212-455-2000
Facsimile: 212-455-2502

E31792B6-E922-48AB-B016-8E9161499B4F : 000066 of 000084

EXH : 000032 of 000033

Bahe Cook Cantley & Nefzger, PLC
1041 Goss Avenue
Louisville, KY 40217
Telephone: (502) 587-2002
Email: vanessa@bccnlaw.com
nathan@bccnlaw.com
patrick@bccnlaw.com
*Counsel for the Commonwealth of Kentucky*

**With the consent of:**

_____
Paul C. Harnice
STOLL KEENON OGDEN PLLC
201 West Main Street, Suite A
Frankfort, Kentucky 40601
*Counsel for Kentucky Public Pensions
Authority*

_____
W. Eric Branco
Johnson Branco & Brennan, LLP
326 W Main Street
Frankfort, Kentucky 40601
*Counsel for County Employees
Retirement System*

_____
Janet P. Jakubowicz
DENTONS BINGHAM GREENEBAUM,
LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
*Counsel for Kentucky Retirement Systems*

mgarvey@stblaw.com
pkazanoff@stblaw.com
david.elbaum@stblaw.com
sricciardi@stblaw.com
alison.sher@stblaw.com
*Counsel for Prisma Capital Partners LP, Girish
Reddy, PAAMCO Prisma, LLC (formerly
Pacific Alternative Asset Management
Company, LLC), and Jane Buchan*

_____
Grahmn N. Morgan
Seth T. Church
Erica A. Ashton
DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, KY 40507
Telephone: 859-425-1010
Facsimile: 859-425-1099
grahmn.morgan@dinsmore.com
seth.church@dinsmore.com
erica.ashton@dinsmore.com

Barry Barnett (*pro hac vice*)
Abigail Noebels (*pro hac vice*)
Ryan Weiss (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: 713-651-9366
Facsimile: 713-653-6666
bbarnett@susmangodfrey.com
anoebels@susmangodfrey.com
rweiss@susmangodfrey.com

Steven Shepard (*pro hac vice*)
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: 212-336-8330
Fascimile: 212-336-8340
sshephard@susmangodfrey.com
*Counsel for Defendants KKR Group Co. Inc.
(formerly KKR & Co. Inc.), Henry Kravis, and
George Roberts*

10

Filed          20-CI-00590 01/08/2025          Kathryn Marshall, Franklin Circuit Clerk

E31792B6-E922-48AB-B016-8E9161499B4F : 000068 of 000084

# EXHIBIT 2

EXH : 000001 of 000007

**COMMONWEALTH OF KENTUCKY**
**COUNTY OF FRANKLIN CIRCUIT COURT**
**DIVISION TWO**
**CASE NO. 20-CI-00590**

COMMONWEALTH OF KENTUCKY
on its own behalf and for the benefit of all
of its departments, commissions, agencies,
political subdivisions, its citizens, taxpayers,
and all pension plan beneficiaries,

PLAINTIFF

v.

KKR & CO., INC., et al.,

DEFENDANTS

**AFFIDAVIT OF LAYN R. PHILLIPS IN SUPPORT OF**
**JOINT MOTION FOR APPROVAL OF THE SETTLEMENT**

Affiant, LAYN R. PHILLIPS, being first duly sworn, deposes and states as follows:

1.      I submit this Affidavit in my capacity as an independent mediator regarding the claims in the above-captioned action (the "Claims") and in connection with the proposed settlement of the Claims (the "Settlement").[1]  I make this Affidavit based on personal knowledge and am competent to so testify.

2.      While the mediation process is confidential, the Parties to the Settlement have authorized me to inform the Court of the matters set forth in this Affidavit in support of approval of the Settlement.  My statements and those of the Parties during the mediation process are subject to a confidentiality agreement and Kentucky Rule of Evidence 408 and all state and federal equivalents, and there is no intention on either my part or the Parties' part to waive the agreement or the protections of Rule 408.

---

[1]      Unless otherwise stated or defined in this Affidavit, all capitalized terms used herein shall have the meanings provided in the Settlement Agreement Between and Among the Commonwealth of Kentucky, the Prisma-PAAMCO Parties, the KKR & Co. Inc. Parties, the Blackstone Parties and the KPPA Entity.

## I.   BACKGROUND AND QUALIFICATIONS

3.      I am a former United States District Judge, a former United States Attorney, and a former litigation partner with the firm of Irell & Manella LLP.  I currently serve as a mediator and arbitrator with my own alternative dispute resolution company, Phillips ADR Enterprises ("Phillips ADR"), which is based in Corona Del Mar, California.  I am a member of the bars of Oklahoma, Texas, California, and the District of Columbia, as well as the United States Courts of Appeals for the Ninth and Tenth Circuits and the Federal Circuit.

4.      I earned my Bachelor of Science in Economics as well as my J.D. from the University of Tulsa.  I also completed two years of L.L.M. work at Georgetown University Law Center in the area of economic regulation of industry.  After serving as an antitrust prosecutor and an Assistant United States Attorney in Los Angeles, California, I was nominated by President Reagan to serve as a United States Attorney in Oklahoma, where I served for just over four years.  Thereafter, I was nominated by President Reagan to serve as a United States District Judge for the Western District of Oklahoma.  While on the bench, I presided over more than 140 federal trials and sat by designation in the United States Court of Appeals for the Tenth Circuit. I also presided over cases in Texas, New Mexico, and Colorado.

5.      I left the federal bench in 1991 and joined Irell & Manella LLP where, for 23 years, I specialized in alternative dispute resolution, complex civil litigation, and internal investigations.  In 2014, I left Irell & Manella LLP to found my own company, Phillips ADR, which provides mediation and other alternative dispute resolution services.

6.      Over the past 27 years, I have served as a mediator and arbitrator in connection with numerous large, complex cases, including cases, such as this one, involving complex financial transactions and/or government entities.

## II.        THE PARTIES' ARM'S-LENGTH SETTLEMENT NEGOTIATIONS

7.      Counsel for the Commonwealth of Kentucky, the Prisma-PAAMCO Parties, the

KKR & Co. Inc. Parties, the Blackstone Parties and the KPPA Entity, as well as other interested

parties, participated in a two-day formal mediation before me in New York, New York on July

11 and 12, 2024.  The participants in the mediation included: (i) attorneys for the

Commonwealth of Kentucky from the Office of the Kentucky Attorney General and from the

law firms Oldfather Law Firm PLLC, Scott Douglass & McConnico, LLP, Lewis Baach

Kaufman Middlemiss PLLC, and Bahe Cook Cantley & Nefzger PLC; (ii) attorneys for the

KPPA Entity from the law firm Stoll Keenon Ogden PLLC, as well as attorneys from the KPPA

Office of Legal Services; (iii) attorneys for the Prisma-PAAMCO Parties from the law firms

Simpson, Thacher, and Bartlett LLP and Dinsmore & Shohl LLP, as well as in-house attorneys

for the Prisma-PAAMCO Parties; (iv) attorneys for the KKR & Co. Inc. Parties from the law

firms Susman Godfrey LLP and Dinsmore & Shohl LLP, as well as in-house attorneys for the

KKR & Co. Inc. Parties; and (v) attorneys for the Blackstone Parties from the law firms Paul,

Weiss, Rifkind, Wharton & Garrison LLP and Wyatt, Tarrant & Combs, LLP, as well as in-

house attorneys for the Blackstone Parties.

8.      In advance of the mediation, the Parties exchanged and submitted to me detailed

opening mediation briefs addressing liability and damages.  The mediation briefs addressed the

specific evidence and legal arguments each side believed supported their respective claims and

defenses.  During the mediation sessions, counsel for the Parties presented arguments regarding

their clients' respective positions.  The work that went into the mediation briefs and competing

presentations and arguments was substantial.

9.      During the mediation sessions, the Parties discussed with me the legal and factual

merits of their positions regarding liability and damages, and I engaged in extensive discussions

with counsel on both sides in an effort to find common ground between the Parties' respective positions. During these discussions, I challenged the Commonwealth, the KPPA Entity, and each of the Defendants separately to address the weaknesses in each of their positions and arguments. In addition to vigorously arguing their positions, the Parties exchanged multiple rounds of settlement demands and offers. The Parties were not able to reach an agreement during the mediation sessions but agreed to continue discussions.

10.      Over the next several weeks, I and my Phillips ADR colleagues held a number of phone calls with counsel for the Parties regarding the monetary and non-monetary terms of a potential resolution. The Parties advocated vigorously for their positions.

11.      Based on those discussions, I issued a mediator's proposal on September 22, 2024, to resolve the Claims for $227.5 million, inclusive of the approximately $145 million held in the Daniel Boone Fund. The proposal was made on a "double blind" basis, which meant that if one side had rejected the proposal they would not learn whether the other side had accepted the proposal. I announced that the Parties had accepted my recommendation on September 24, 2024.

12.      Following the acceptance of the mediator's proposal regarding monetary terms, the Parties continued to dispute important non-monetary terms of a potential agreement. I and my Phillips ADR colleagues held a number of additional phone calls with the Parties regarding these disputed terms.

13.      On October 22, 2024, one of my Phillips ADR colleagues held another mediation session with counsel for the Office of the Attorney General and for the Defendants in-person in New York, New York, in an effort to reach resolution on such disputed non-monetary terms.

The Parties were not able to reach an agreement during this mediation session but agreed to continue discussions among the Parties and with myself and my colleagues at Phillips ADR.

14. Based on those subsequent discussions, I issued a mediator's proposal on November 17, 2024, to resolve certain remaining disputed terms. The proposal was also made on a "double blind" basis. I announced the Parties had accepted my recommendation on November 18, 2024. Thereafter, the Parties documented their resolution in the settlement agreement before the Court.

15. The mediation process was an extremely hard-fought negotiation from beginning to end and was conducted by experienced and able counsel on both sides. Throughout the mediation process, the negotiations between the Parties were vigorous and conducted at arm's-length and in good faith. Because the Parties made their mediation submissions and arguments in the context of a confidential mediation process pursuant to Kentucky Rule of Evidence 408 and all state and federal equivalents, I cannot reveal their content. I can say, however, that the arguments and positions asserted by all involved were the product of substantial work, were complex and highly adversarial, and reflected a detailed and in-depth understanding of the strengths and weaknesses of the claims and defenses at issue in this case.

## III.     CONCLUSION

16. Based on my experience as a litigator, a former United States Attorney, United States District Judge, and a mediator, I believe that the Settlement represents a recovery and outcome that is reasonable and fair for all Parties involved. I further believe it was in the best interests of the Parties that they avoid the burdens and risks associated with taking a case of this size and complexity to trial. I support the Court's approval of the Settlement in all respects.

E31792B6-E922-48AB-B016-8E9161499B4F : 000073 of 000084

EXH : 000006 of 000007

17.    Lastly, the advocacy on both sides of the case was excellent.  All counsel displayed the highest level of professionalism in zealously and capably representing their respective clients.

Further affiant sayeth naught.

_____
Layn R. Phillips
Former U.S. District Judge

STATE OF NEW YORK    )
                     )
COUNTY OF NEW YORK   )

The foregoing instrument was acknowledged, subscribed, and sworn before me this 18 day of December, 2024, by Layn R. Phillips.

_____
Notary Public

LESLIE ORTIZ QUIROZ
Notary Public, State of New York
No. 01OR0019037
Qualified in Bronx County
Commission Expires December 22, 2027

# COMMONWEALTH OF KENTUCKY
## FRANKLIN CIRCUIT COURT
## DIVISION TWO
## CASE NOs. 20-CI-00590 and 24-CI-00354

COMMONWEALTH OF KENTUCKY, on
its own behalf and for the benefit of all of its
departments, commissions, agencies, political
subdivisions, its citizens, taxpayers, and all
pension plan beneficiaries,

          PLAINTIFF

v.

KKR & CO. INC., et al.,

          DEFENDANTS

## [PROPOSED] FINAL ORDER APPROVING SETTLEMENT AGREEMENT

**Whereas**, this matter is before the Court on the Joint Motion to Approve Settlement Agreement (the "Motion") by (1) the Commonwealth of Kentucky (the "Commonwealth"); (2) the Kentucky Public Pensions Authority ("KPPA"), the County Employees Retirement System ("CERS"), the Kentucky Retirement System ("KRS") (collectively with each of their respective Boards of Trustees, the "KPPA Entity"); (3) PAAMCO Prisma, LLC (formerly Pacific Alternative Asset Management Company, LLC, and hereinafter "PAAMCO"), Jane Buchan, Prisma Capital Partners LP ("Prisma"), and Girish Reddy (together with PAAMCO, Buchan, and Prisma, the "PAAMCO-Prisma Parties"); (4) KKR Group Co. Inc. (formerly KKR & Co. Inc.), Henry R. Kravis, and George R. Roberts (the "KKR & Co. Inc. Parties"); and (5) Blackstone Inc., Blackstone Alternative Asset Management L.P. ("BAAM"), Stephen A. Schwarzman, and J. Tomilson Hill (the "Blackstone Parties") (together with the KKR & Co. Inc. Parties and the PAAMCO-Prisma Parties, the "Settling Defendants") (all collectively, the "Settling Parties");

**Whereas**, the Settling Parties, having entered into a settlement agreement, dated December 20, 2024 and attached as Exhibit 1 (the "Settlement Agreement"), seek this Court's approval of the Settlement Agreement and entry of a final order approving the same;

1

**Whereas**, this case consists of two actions that were consolidated on May 1, 2024: *Commonwealth of Kentucky* v. *KKR & Co. Inc.*, Civil Action No. 20-CI-00590 (Franklin County Circuit Court), filed on July 21, 2020 ("*590 Action*"), and *Commonwealth of Kentucky* v. *KKR & Co. Inc.*, Civil Action No. 24-CI-00354 (Franklin County Circuit Court), filed on April 8, 2024 ("*354 Action*");

**Whereas**, in both *590 Action* and *354 Action*, the Commonwealth brought claims against the Settling Defendants, trustees and officers of the KPPA Entity, and several other groups of defendants alleging breach of trust, breach of fiduciary duty, breach of statutory duty, aiding and abetting such breach, participating in a joint enterprise and/or civil conspiracy, and breach of contract arising out of funds of hedge funds investments made by the KPPA Entity with funds managed by certain of the Settling Defendants;

**Whereas**, in both *590 Action* and *354 Action*, the Commonwealth's claims are being prosecuted by and through the Attorney General of the Commonwealth of Kentucky, in his capacity as the Chief Law Officer of the Commonwealth and for the benefit of all of the Commonwealth's departments, commissions, agencies, political subdivisions, citizens, taxpayers, pension plans and trusts, and pension plan members and beneficiaries of any and all tiers and classifications;

**Whereas**, there are currently pending before this Court and the U.S. District Court for the Eastern District of Kentucky, two other actions brought by two substantially overlapping groups of individual plaintiffs (collectively, the "*Taylor* Plaintiffs"), all of whom are individual members of the Tier 3 class pension funds administered and managed by the KPPA Entity: *Taylor* v. *KKR & Co. Inc.*, Civil Action No. 21-CI-00645, filed on August 19, 2021 in the Franklin County Circuit Court ("*Taylor 1*"); and *Taylor* v. *KKR & Co. Inc.*, originally action 21-CI-00020, filed on January

Tendered        20-CI-00590 01/08/2025        Kathryn Marshall, Franklin Circuit Clerk

6, 2021 in the Franklin Circuit Court and removed on July 20, 2021 to the U.S. District Court for the Eastern District of Kentucky, No. 3:21-cv-00029 ("*Taylor 2*") (collectively, the "*Taylor Actions*");

**Whereas**, the *Taylor Actions* purport to assert claims arising out of a common nucleus of operative facts as those alleged by the Commonwealth in *590 Action* and *354 Action*, seeking recovery against the Settling Defendants and other defendants for allegedly participating in breach of trust, breach of fiduciary duty, aiding and abetting such breach, and participating in a joint enterprise and/or civil conspiracy and/or pattern of racketeering activity in connection with certain investments made by the KPPA Entity with funds managed by certain of the Settling Defendants;

**Whereas**, the Court had set this matter so that all interested parties, including the *Taylor* Plaintiffs, could be heard regarding the terms of the Settlement Agreement in order to determine whether the Settlement Agreement is fair and reasonable and in the best interests of the Commonwealth, the KPPA Entity, and all plans, trusts, systems, pension funds, and tiers whose interests any of the KPPA Entity administers and/or oversees, and for whose benefit the Commonwealth is suing in the *590 Action* and *354 Action*;

**Whereas**, this Court has duly considered all arguments and objections raised by all interested parties;

**Whereas**, the Court finds that certain of the terms and conditions in the Settlement Agreement are subject to this Court's final approval, specifically those (i) fully and finally resolving all claims in *590 Action* and *354 Action*, and all Related Litigations as defined in the Settlement Agreement, (ii) releasing and discharging the Released Claims pursuant to the terms of the Settlement Agreement, and (iii) imposing a bar order prohibiting any further pursuit of the Released Claims as described in Paragraph 13 of this Order.

3

Tendered        20-CI-00590 01/08/2025        Kathryn Marshall, Franklin Circuit Clerk

**Whereas**, unless otherwise defined, all terms used herein have the same meaning as set forth in the Settlement Agreement.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**, as follows:

1.      The Court finds that it has jurisdiction over the subject matter of *590 Action* and *354 Action*, including all matters necessary to enter the Approval Order or to interpret or effectuate the terms of the Settlement Agreement.

2.      The Court has reviewed the terms and conditions of the Settlement Agreement, which fully and finally resolves all claims in *590 Action*, *354 Action*, and all Related Litigations. All capitalized terms not defined in this Order are as defined in the Settlement Agreement submitted as Exhibit 1 of this Order.

3.      The Court finds that the Settlement is fair, reasonable and adequate, and in the best interests of the Commonwealth, the KPPA Entity, and all plans, trusts, systems, pension funds, and tiers whose interests any of the KPPA Entity oversees and/or administers, and for whose benefit the Commonwealth is suing in the *590 Action* and *354 Action*.

4.      The Court finds that the Settlement Agreement is the result of good faith, arm's-length negotiations between the Settling Parties, all of which are represented by experienced counsel who fairly and adequately represented the interests of their respective Parties and their Related Parties, and is the product of a mediator's proposal recommended by an experienced, knowledgeable mediator, former United States District Court Judge Layn Phillips.

5.      The Court finds that the Commonwealth, through the Attorney General, is legally authorized to bring this case pursuant to KRS 15.020 as the real party in interest "on its behalf and for the benefit of all its departments, commissions, agencies, political subdivisions, citizens, taxpayers, and pension plan beneficiaries of any and all tiers and classifications" for injuries

4

allegedly caused to "the Commonwealth, its departments, commissions, agencies, political subdivisions, citizens, taxpayers, and all pension plan beneficiaries."  Third Am. Compl. ¶ 1; *see also Overstreet* v. *Mayberry*, 603 S.W.3d 244, 265–66 (Ky. 2020).  The Court further finds that the Commonwealth, through the Attorney General, has adequately represented the interests of all of its departments, commissions, agencies, political subdivisions, citizens, taxpayers, pension plans and trusts, and pension plan members and beneficiaries of any and all tiers and classifications for whose benefit it is suing in this case.

6.      The Court finds that the Commonwealth Releasors and the KPPA Entity Releasors are legally authorized to enter into the Settlement Agreement and fully and finally resolve and release with prejudice, the Released Claims against the PAAMCO-Prisma Releasees, the KKR & Co. Inc. Releasees, and the Blackstone Releasees pursuant to the terms and conditions of the Settlement Agreement, which Released Claims include the claims in the *Taylor Actions* as described in Paragraph 9 of the Settlement Agreement.  *See* KRS 61.645; KRS 15.020; *cf. Overstreet*, 603 S.W.3d at 261 n. 75 (citing KRS 61.645).

7.      The Court finds that the KPPA Entity, having exercised its business judgment, and in compliance with its fiduciary duties, has the authority to determine and has independently concluded that this Settlement Agreement, including the global Releases of the Released Claims therein for the benefit of itself and its members, is in the best interests of the KPPA Entity and all plans, trusts, systems, pension funds, and tiers whose interests any of the KPPA Entity administers and/or oversees and that the KPPA Entity's independent business judgment in this regard is entitled to deference.

8.      The Court finds that the Commonwealth has authority to determine whether this Settlement Agreement, including the global Releases of the Released Claims therein, is fair,

reasonable, and adequate to itself and all of its departments, commissions, agencies, political subdivisions, citizens, taxpayers, pension plans and trusts, and pension plan members and beneficiaries of any and all tiers and classifications, whose interests it represents in this litigation, and has made that determination, which is consistent with the KPPA Entity's separate determination that the Settlement Agreement is in the best interests of the KPPA Entity.

9.      Accordingly, the Court finds that the Settling Parties' entry into and performance of the Settlement Agreement shall constitute a full accord and satisfaction of the Released Claims, and shall preclusively release the Settling Defendants from any further liability for the Released Claims in accordance with the terms and conditions of the Settlement Agreement.  The Court further finds that the releases of Released Claims by the Commonwealth Releasors and the KPPA Entity Releasors shall be fully effective releases in all current and future actions upon performance of the terms and conditions of the Settlement Agreement.

10.     The Court finds that all interested parties, including but not limited to the named plaintiffs in the *Taylor Actions*, were provided reasonable notice and an opportunity to be heard regarding the Approval Motion, and that the Court has duly taken their objections, if any, into consideration.

11.     The Court finds that the Commonwealth and the KPPA Entity have adequately established that the distributions of the Settlement Recovery pursuant to the Settlement Agreement is subject to appropriate public accountability and inures to the public benefit of the Commonwealth, the KPPA Entity, and the pension plans and individual members whose interests the KPPA Entity administers and oversees.

12.     For all of the foregoing reasons, the Court hereby APPROVES the Settlement Agreement in all respects, FINDS that the Settlement Agreement is fair, reasonable, and adequate

in all regards, and DIRECTS the Settling Parties to consummate the Settlement Agreement in accordance with its terms.

13.     The Court hereby further permanently BARS and ESTOPS all persons or entities from asserting, instituting, maintaining, or participating in, in any forum, any Released Claims against the PAAMCO-Prisma Releasees, the KKR & Co. Inc. Releasees, and the Blackstone Releasees that seek collective, plan-wide, trust-wide, system-wide, pension-fund-wide, or tier-wide relief on behalf of or for the KPPA Entity, their predecessors, and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by them or that allege individual injuries that are derivative of alleged injuries to the KPPA Entity, their predecessors, and/or the plans, trusts, systems, pension funds, or tiers administered or overseen by them.

14.     The Court finds that by entering into and seeking the Court's approval of the Settlement Agreement, the Settling Parties intend to fully and finally resolve all of the claims between them in accordance with the terms and conditions set forth in the Settlement Agreement, including releasing the Released Claims upon distribution of all funds held in the Escrow Account and the Daniel Boone Fund Reserve in accordance with Paragraphs 5(a) and 6 of the Settlement Agreement.  The Court therefore SEVERS all of the claims and causes of action brought against all Settling Defendants from the claims and causes of action brought against all other Defendants. The Court hereby ENTERS THIS FINAL JUDGMENT approving the Settlement Agreement, and adjudicates that the claims asserted in the *590 Action* and *354 Action* against all Settling Defendants are fully and finally resolved subject to the terms and conditions of the Settlement Agreement and dismissed with prejudice effective upon distribution of all funds held in the Escrow Account and the Daniel Boone Fund Reserve in accordance with Paragraphs 5(a) and 6 of the Settlement Agreement.

7

15.     Without affecting the finality of this Judgment, this Court retains continuing jurisdiction for purposes of the administration, interpretation, implementation, and enforcement of the Settlement Agreement and this Order, including but not limited to Paragraph 13 of this Order.

16.     The Settling Parties shall jointly notify the Court in writing upon the distribution of all funds held in the Escrow Account and the Daniel Boone Fund Reserve in accordance with Paragraphs 5(a) and 6 of the Settlement Agreement.

17.     All Parties shall bear their own fees, costs, and expenses.

18.     This order is final and appealable and there is no just cause for delay.  The clerk is hereby directed to serve notice of entry under CR 77.04.

**SO ORDERED**, this _____ day of _____, 2025.


_____

**THOMAS D. WINGATE**
**Judge, Franklin Circuit Court**


**Notice:** All parties

Tendered By:

| | |
|---|---|
| /s/ *Ann B. Oldfather* | /s/ *Donald J. Kelly (w/permission)* |
| Ann B. Oldfather (KBA 52553) | Donald J. Kelly |
| R. Sean Deskins (KBA 92430) | Sean G. Williamson |
| Michael R. Hasken (KBA 94992) | Victoria Boland Fuller |
| OLDFATHER LAW FIRM PLLC | WYATT, TARRANT & COMBS, LLP |
| 1330 South Third Street | 400 West Market Street, Suite 2000 |
| Louisville, KY 40208 | Louisville, KY 40202 |
| Telephone: (502) 637-7200 | (502) 589-5235 |
| Email: aoldfather@oldfather.com | |
| sdeskins@oldfather.com | |
| mhasken@oldfather.com | Brad S. Karp (admitted *pro hac vice*) |
| | Andrew J. Ehrlich (admitted *pro hac vice*) |
| | Brette Tannenbaum (admitted *pro hac vice*) |
| Casey L. Dobson | David P. Friedman (admitted *pro hac vice*) |
| S. Abraham Kuczaj, III | PAUL, WEISS, RIFKIND, |
| Scott Douglass McConnico, LLP | WHARTON & GARRISON LLP |
| 303 Colorado Street, Suite 2400 | 1285 Avenue of the Americas |
| Austin, Texas 78701 | New York, NY 10019 |
| Telephone: (512) 495-6300 | (212) 373-3000 |
| Email: cdobson@scottdoug.com | *Counsel for Blackstone Alternative Asset* |
| akuczaj@scottdoug.com | *Management L.P.; Blackstone Inc.; Stephen A.* |
| | *Schwarzman; and J. Tomilson Hill* |
| Justin D. Clark (KBA 89313) | |
| Aaron J. Silletto (KBA 89305) | /s/ *Grahmn N. Morgan (w/permission)* |
| Office of the Kentucky Attorney General | Grahmn N. Morgan |
| 1024 Capital Center Drive | Seth T. Church |
| Suite 200 | Erica A. Ashton |
| Frankfort, KY 40601 | DINSMORE & SHOHL LLP |
| Tel: (502) 696-5300 | 100 West Main Street, Suite 900 |
| aaron.silletto@ky.gov | Lexington, KY 40507 |
| justind.clark@ky.gov | Telephone: 859-425-1010 |
| | Facsimile: 859-425-1099 |
| | grahmn.morgan@dinsmore.com |
| Eric L. Lewis | seth.church@dinsmore.com |
| Mark J. Leimkuhler | erica.ashton@dinsmore.com |
| Lewis Baach Kaufmann Middlemiss PLLC | |
| 1101 New York Avenue, NW, Suite 1000 | |
| Washington, D.C. 20005 | Michael J. Garvey (*pro hac vice*) |
| Telephone: (202) 833-8900 | Peter E. Kazanoff (*pro hac vice*) |
| Email: eric.lewis@lbkmlaw.com | David Elbaum (*pro hac vice*) |
| mark.leimkuhler@lbkmlaw.com | Sara Ricciardi (*pro hac vice*) |
| chiara.spector@lbkmlaw.com | Alison Sher (*pro hac vice*) |
| jessica.buckwalter@lbkmlaw.com | SIMPSON THACHER & BARTLETT LLP |
| | 425 Lexington Avenue |
| | New York, New York 10017 |
| Vanessa B. Cantley (KBA 90279) | Telephone: 212-455-2000 |
| Nathan D. Williams (KBA 92172) | Facsimile: 212-455-2502 |
| Patrick E. Markey (KBA 96502) | |

9

Bahe Cook Cantley & Nefzger, PLC
1041 Goss Avenue
Louisville, KY 40217
Telephone: (502) 587-2002
Email: vanessa@bccnlaw.com
nathan@bccnlaw.com
patrick@bccnlaw.com
*Counsel for the Commonwealth of Kentucky*

**With the consent of:**


/s/ *Paul C. Harnice (w/permission)*
Paul C. Harnice
STOLL KEENON OGDEN PLLC
201 West Main Street, Suite A
Frankfort, Kentucky 40601
*Counsel for Kentucky Public Pensions Authority*

/s/ *W. Eric Branco  (w/permission)*
W. Eric Branco
Johnson Branco & Brennan, LLP
326 W Main Street
Frankfort, Kentucky 40601
*Counsel for County Employees Retirement System*


/s/ *Janet P. Jakubowicz (w/permission)*
Janet P. Jakubowicz
DENTONS BINGHAM GREENEBAUM, LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
*Counsel for Kentucky Retirement Systems*

mgarvey@stblaw.com
pkazanoff@stblaw.com
david.elbaum@stblaw.com
sricciardi@stblaw.com
alison.sher@stblaw.com
*Counsel for Prisma Capital Partners LP, Girish Reddy, PAAMCO Prisma, LLC (formerly Pacific Alternative Asset Management Company, LLC), and Jane Buchan*


/s/ *Grahmn N. Morgan (w/permission)*
Grahmn N. Morgan
Seth T. Church
Erica A. Ashton
DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, KY 40507
Telephone: 859-425-1010
Facsimile: 859-425-1099
grahmn.morgan@dinsmore.com
seth.church@dinsmore.com
erica.ashton@dinsmore.com


Barry Barnett (*pro hac vice*)
Abigail Noebels (*pro hac vice*)
Ryan Weiss (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: 713-651-9366
Facsimile: 713-653-6666
bbarnett@susmangodfrey.com
anoebels@susmangodfrey.com
rweiss@susmangodfrey.com


Steven Shepard (*pro hac vice*)
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: 212-336-8330
Fascimile: 212-336-8340
sshephard@susmangodfrey.com
*Counsel for Defendants KKR Group Co. Inc. (formerly KKR & Co. Inc.), Henry Kravis, and George Roberts*

10